## BRIMSTONE RAILROAD AND CANAL COMPANY *v.* UNITED STATES et al.

### APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF LOUISIANA

No. 240. Argued October 10, 11, 1927.—Decided February 20, 1928.

1. An order of the Interstate Commerce Commission reduced the divisions of joint rates accorded a short line railroad by an agreement with its connections, and thus increased theirs correspondingly, upon a finding that the share of the short line exceeded a fair return on its property over cost of service and was tantamount to a rebate to a mining company which owned its stock and contributed most of its traffic. The finding was based on a study of the short line's property and affairs; the service it performed; divisions established by the United States Railroad Administration; other divisions, past and present; volume and distribution of traffic; comparison between the questioned divisions and those received by other lines in the same territory; and testimony that competition controlled the agreed divisions; but there was no evidence that the connecting carriers were in need, or received, or would receive, more than or less than a fair return from the agreed divisions; that the joint rates themselves were unfair or unjust, or that the agreed divisions were " unjust, unreasonable, inequitable or unduly preferential or prejudicial as between the carriers." The order was made retroactive to the date when the investigation was instituted by the Commission. *Held:*

(1) That as items definitely specified by § 15 (6) of the amended Act to Regulate Commerce were not considered, the order must be annulled. *New England Divisions Case,* 261 U. S. 184; *United States* v. *Abilene & Southern Railway,* 265 U. S. 274, distinguished. P. 115.

(2) Section 15 (6) grants no power to require readjustment between carriers of past receipts from agreed joint rates. P. 117.

(3) Section 15 (6) authorizes the Commission to readjust divisions already received only when the joint rate was established pursuant to a finding or order of the Commission made under § 15 (1) or (3), after full hearing in respect of the specific rate. Mere permission granted by the Commission to increase or diminish all rates according to the needs of carriers throughout the country, is not enough. P. 125.

17 F. (2d) 165, reversed.

APPEAL from a decree of the District Court sustaining an order of the Interstate Commerce Commission in a suit brought by the appellant to annul it. The nature of the order is fully explained in the opinion.

*Mr. C. R. Liskow,* with whom *Messrs. James T. Kilbreth* and *Wylie M. Barrow* were on the brief, for appellant.

The Commission is without power to determine the divisions, except as between the carriers party to the rates, and except after a hearing and investigation of the operating expenses, taxes and other facts and circumstances connected with the operation of each of the several carriers participating in such joint rates. *Akron, etc.* v. *United States,* 261 U. S. 184; *United States* v. *Abilene & Southern Ry.,* 265 U. S. 274.

The Commission is without power to establish divisions of joint through rates to be applied prior to the date of its final order and retroactively unless and until the joint rates, of which such divisions form a part, have been established pursuant to a finding or order of the Commission, which must have been made under the provisions of § 15 (3) of the Interstate Commerce Act. The lower court erred in holding that the increase in rates allowed by *Ex Parte 74 Increased Rates,* 58 I. C. C. 220, was the establishing of joint rates. *Virginia Railroad Co.* v. *United States,* 272 U. S. 658.

The report and order of the Commission, of December 14, 1925, results in the taking of the property of the

Brimstone without due process of law and the confiscation thereof in violation of the Fifth Amendment.

The divisions received by the Brimstone had all been proportionately reduced by § 15 (2) of the Interstate Commerce Act before collection, and the Government has appropriated the excess net railway operating income of the Brimstone over 6 per centum per annum on the value of the carrier's property used in the service of transportation.

*Mr. Blackburn Esterline,* Assistant to the Solicitor General, with whom *Solicitor General Mitchell* was on the brief, for the United States.

The Commission not only had the authority, but it was its duty, to investigate and consider the one enterprise and single investment which is the dominant feature of this case. It falls clearly within a line of cases in which the one enterprise and single investment arrangement has been condemned repeatedly. *United States* v. *Koenig Coal Co.,* 270 U. S. 512; *The Tap Line Cases,* 234 U. S. 1; *O'Keefe* v. *United States,* 240 U. S. 294; *Manufacturers Rwy.* v. *United States,* 246 U. S. 457. See also *Industrial Rwys. Case,* 29 I. C. C. 213; *Id.* 32 I. C. C. 129; *Second Industrial Rwys. Case,* 34 I. C. C. 596; *Chicago, West Pullman & Southern R. R.,* 37 I. C. C. 558; *Chestnut Ridge Rwy.,* 41 I. C. C. 62; *Chestnut Ridge Rwy.* v. *United States,* 248 Fed. 791; *Louisiana & Pine Bluff Rwy.* v. *United States,* 257 U. S. 114; *Northampton & Bath R. R.* 41 I. C. C. 68; *Owasco River Rwy.,* 53 I. C. C. 104; *Lake Erie & Fort Wayne R. R.,* 58 I. C. C. 558; *Birmingham Southern R. R.* v. *Director General,* 61 I. C. C. 551.

If the Commission must keep the case open in order that new testimony may be taken each year, and from year to year, on operating expenses or other subjects, it would be impossible to fix the divisions. The statute does not require that hearings shall be perennial. There

is no presumption that the Commission was considering matters *aliunde.*

The Commission had the authority under the statute to make its order effective as of August 1, 1921, the date of the order of investigation, and the District Court was right in so holding.

If appellant, by the order of the Commission, has received all it is entitled to under the law, the adequacy or inadequacy of the amounts left for Louisiana Western and Kansas City Southern would seem to be a matter with which appellant has no concern. *New England Divisions Case,* 261 U. S. 184; *United States* v. *Abilene & Southern Ry.,* 265 U. S. 274.

*Mr. D. W. Knowlton,* with whom *Messrs. E. M. Reidy* and *P. J. Farrell* were on the brief, for the Interstate Commerce Commission.

Where the need for action is merely the fixing of an industrial short-line's division, the Commission may fix separately such division while regarding the remainder of the joint rate as a joint division or joint proportion going to the carriers participating in the traffic beyond the industrial carriers' junction with the connecting trunk line, and in such case due consideration is given to the factors named by respectively considering the adequacy with relation to those factors of the separate division for the individual needs of the industrial carrier on the one hand and the adequacy with relation to those factors of the remaining proportion for the joint needs of the remaining carriers on the other.

Where the separate fixing of an industrial carrier's division results in an increased proportion going to the trunk-line carriers, due consideration of the factors named does not require the submission of the same involved cost studies and detailed evidence in respect of the thousands of miles of road operated by the trunk lines as was found

practicable in separately fixing the division of the industrial line, for, on the one hand, the interests of the trunk lines and that of the public in their efficient service has been promoted by the action taken, and, on the other hand, the fair return of the industrial line and interest of the public in its efficient service has been safeguarded by careful consideration given to detailed evidence.

In reducing the Brimstone's division and consequently fixing an increased proportion for the remaining carriers, the Commission gave, with relation to the factors named, the due consideration to the Brimstone's requirements and to the joint requirements of the remaining carriers which the Act called for under the circumstances obtaining.

Such adjustment of divisions was not retroactive in the sense that it took from the Brimstone, revenue to which it was ever properly entitled.

The divisions and adjustment thereof ordered by the Commission, were of joint rates established pursuant to findings or orders rendered by the Commission in certain general rate-group proceedings, known as *Increased Rates, 1920,* 58 I. C. C. 220; and *Reduced Rates, 1922,* 68 I. C. C. 626, thereby strictly conforming not only with the letter of the divisions paragraph of the Act, but to its purpose as well, which is particularly directed toward effecting distribution commensurately with individual carrier needs of revenues derived from rates established in just such general rate-group proceedings, wherein aggregate carrier needs and property values constitute the prescribed rate bases and individual carrier needs are necessarily disregarded for the time being.

MR. JUSTICE McREYNOLDS delivered the opinion of the Court.

Appellant seeks annulment of an Interstate Commerce Commission order, entered December 14, 1925, which designated the divisions it might thereafter receive from

agreed joint rates and required readjustment of divisions received subsequent to August 1, 1921, when the investigation began.

The Court below dismissed the bill. Two of the objections to the order, there advanced, will be considered.

1. The Commission failed to investigate or determine the reasonableness or justness of the divisions, or whether they were unjust, unreasonable, inequitable, or unduly preferential or prejudicial, as between the carriers; also failed to consider whether the circumstances entitled one to a greater or less proportion than another of the joint rates, as commanded by Section 15(6), Transportation Act, 1920. (41 Stat. c. 91, p. 456.)

2. The joint rates were agreed upon by the parties and not " established pursuant to any finding or order " of the Commission, within Section 15(6), Transportation Act, 1920. Consequently, the Commission had no power to require adjustments for any period prior to the final order.

Section 1(4) Transportation Act, 1920, directs common carriers to establish through routes, reasonable and equitable rates, fares and charges; also to establish divisions of joint rates just, reasonable and equitable as between the participants, which shall not unduly prefer or prejudice any of them.

Section 15(1) empowers the Commission whenever, after full hearing, it shall find any rate charged by a carrier is or will be unjust or unreasonable or unjustly discriminatory or unduly preferential, or prejudicial, or otherwise in violation of this Act, to determine and prescribe the just and reasonable rate thereafter to be observed, and to make an order requiring the carrier to cease and desist from such violation.

Section 15(3) provides that " the Commission may, and it shall whenever deemed by it to be necessary or desirable in the public interest, after full hearing," establish joint

rates, " and the division of such rates, fares, or charges as hereinafter provided."

Section 15(6)—

" Whenever, after full hearing upon complaint or upon its own initiative, the Commission is of opinion that the divisions of joint rates, fares, or charges, applicable to the transportation of passengers or property, are or will be unjust, unreasonable, inequitable, or unduly preferential or prejudicial as between the carriers parties thereto (whether agreed upon by such carriers, or any of them, or otherwise established), the Commission shall by order prescribe the just, reasonable, and equitable divisions thereof to be received by the several carriers, and in cases where the joint rate, fare, or charge was established pursuant to a finding or order of the Commission and the divisions thereof are found by it to have been unjust, unreasonable, or inequitable, or unduly preferential or prejudicial, the Commission may also by order determine what (for the period subsequent to the filing of the complaint or petition or the making of the order of investigation) would have been the just, reasonable, and equitable divisions thereof to be received by the several carriers, and require adjustment to be made in accordance therewith. In so prescribing and determining the divisions of joint rates, fares and charges, the Commission shall give due consideration, among other things, to the efficiency with which the carriers concerned are operated, the amount of revenue required to pay their respective operating expenses, taxes, and a fair return on their railway property held for and used in the service of transportation, and the importance to the public of the transportation services of such carriers and also whether any particular participating carrier is an originating, intermediate, or delivering line, and any other fact or circumstance which would ordinarily, without regard to the mileage haul, entitle

one carrier to a greater or less proportion than another carrier of the joint rate, fare or charge."

Appellant owns and operates a railroad ten miles long in southwestern Louisiana, is a common carrier of freight only, and makes interchanges with lines of the Southern Pacific[1] and Kansas City Southern. Except five shares, its capital stock—$200,000—is owned by Union Sulphur Company, which operates mines near its line and consigns and receives over ninety per centum of the property moving thereon. Prior to 1920 appellant and connecting carriers established through rates and divisions by agreements. These were modified as permitted or suggested in Ex Parte 74 (1920) 58 I. C. C. 220, and Matter of Reduced Rates (1922) 68 I. C. C. 676.

In Ex Parte 74, the Commission considered applications under section 15a,[2] Transportation Act, 1920, for authority generally to increase rates so that carriers as a whole might earn a fair return. It found, (July 29, 1920, 58 I. C. C. 220, 246, 245):

---

[1] The lines of the Louisiana Western Railroad are part of the Southern Pacific System.

[2] Transportation Act, 1920—

Sec. 15a [Added February 28, 1920]

(2) In the exercise of its power to prescribe just and reasonable rates the Commission shall initiate, modify, establish or adjust such rates so that carriers as a whole (or as a whole in each of such rate groups or territories as the Commission may from time to time designate) will, under honest, efficient and economical management and reasonable expenditures for maintenance of way, structures and equipment, earn an aggregate annual net railway operating income equal, as nearly as may be, to a fair return upon the aggregate value of the railway property of such carriers held for and used in the service of transportation: *Provided,* That the Commission shall have reasonable latitude to modify or adjust any particular rate which it may find to be unjust or unreasonable, and to prescribe different rates for different sections of the country.

". . . The following percentage increases in the charges for freight service, including switching and special services, together with the other increases hereinbefore approved, would under present conditions result in rates not unreasonable in the aggregate under section 1 of the act and would enable the carriers in the respective groups, under honest, efficient, and economical management and reasonable expenditures for maintenance of way, structures, and equipment, to earn an aggregate annual railway operating income equal, as nearly as may be, to a return of 5½ per cent. upon the aggregate value, for the purposes of this proceeding, of the railway property of such carriers held for and used in the service of transportation and one-half of 1 per cent. in addition: eastern group, 40 per cent.; southern group, 25 per cent.; western group, 35 per cent.; Mountain-Pacific group, 25 per cent.

"After carefully considering the situation we find that with the exceptions hereinafter noted general percentage increases made to fit the needs of the groups of lines serving each of the four groups must be considered for present purposes the most practicable. This conclusion is without prejudice to any subsequent finding in individual situations."

And it accordingly authorized general increases as specified "in the rates, fares and charges of railroads within the continental United States." It did not approve or require the adoption or maintenance of any particular rate.

In the Matter of Reduced Rates, (May 16, 1922, 68 I. C. C. 676)—instituted to determine whether further general reductions might be required under section 1, also what would constitute fair return under section 15a(3)—after referring to the authorized increases of 1920, the Commission found that 5.75 per centum would be fair thereafter and would result if formerly authorized rates were reduced by specified percentages. The order was that carriers should promptly report "whether the

findings herein will be carried into effect without formal order or orders by us." It did not require the adoption or maintenance of any rate, nor was any particular rate approved.

August 1, 1921, the Commission began " an investigation into and concerning the justness, reasonableness, and equitableness of the divisions received by the Brimstone Railroad & Canal Company out of the joint rates applicable to the transportation of property." It ordered " that the Brimstone Railroad and Canal Company, the Southern Pacific Company and The Kansas City Southern Railway Company be and they hereby are made respondents to this proceeding."

Testimony was taken relative to ownership and organization of the Brimstone Company; its relation to Union Sulphur Company; its operating and financial condition, including dividends, surplus, and character of service performed; volume of road-building material carried for Parish purposes; establishment by United States Railroad Administration of divisions with connecting lines, with factors considered in connection therewith; comparison between the questioned divisions and those received by other lines in the same territory; also value of operating property, including cost of reproduction.

The Commission's first report—April 4, 1922—declared the Brimstone Company a common carrier subject to the interstate commerce act entitled to participate in joint rates, or have its charges absorbed under appropriate tariff provisions. And further:

"The divisions to the Brimstone should produce no more than an amount sufficient to cover the cost of its service and a fair return upon the property held for and used in the service of transportation. We conclude that the facts of record, including the dividends paid by the Brimstone in past years and the accumulated credit balance to profit and loss, indicate divisions to the Brimstone

which are disproportionate, in view of the service rendered, and are tantamount to a rebate to the proprietary company.

"We find that the divisions of joint rates now received by the Brimstone from the two other respondents on interstate traffic are, and for the future will be unjust, unreasonable, inequitable, and to the extent that they exceed or may exceed the cost of the service and a fair return upon the property held for and used in the service of transportation for the public generally, are excessive, and, in effect, amount to a rebate to the proprietary company. It does not necessarily follow that reasonable and equitable divisions to the Brimstone should be on the maximum basis.

"The record will be held open for a period of ninety days from the date of service of this report, during which respondents will be expected to make the necessary cost studies for the purpose of arriving at reasonable divisions to the Brimstone."

The subsequent studies related only to the Brimstone Company; they did not extend at all to connecting carriers. The Commission (88 I. C. C. 58, March 10, 1924) said they were "intended to develop the average cost, including return on investment, of moving loaded cars to and from the Southern Pacific and Kansas City Southern." No studies were made or evidence taken concerning efficiency of Southern Pacific and Kansas City Southern lines, amount of revenue required to pay their respective operating expenses, taxes, and fair return upon their property, or the public importance of services performed by them, or any other fact or circumstance (except as shown above) which ordinarily, without regard to the mileage haul, would entitle them to a greater or less proportion of the joint rate. Section 15(6).

March 10, 1924, a second report and order prescribed what the Brimstone Company might thereafter receive

from joint rates and ordered readjustment of divisions received after August 1, 1921.  No change was directed in the joint rates or finding made relevant to their justness, nor was there any pronouncement concerning apportionments amongst other carriers.  The Commission said:—

"Based upon the cost of the service and a fair return upon the property held for and used in the service of transportation for the public generally, we find that during the period from August 1, 1921, to but not including July 1, 1922, just, reasonable and equitable divisions to the Brimstone would have been: (Here follows certain specific divisions)  . . ."

"We further find that on and after July 1, 1922, just, reasonable and equitable divisions to the Brimstone were, are and for the future will be: (Here follows certain specific divisions)  . . . ."

"We further find that the divisions received by the Brimstone should be adjusted on a basis not in excess of the charges above found just, reasonable and equitable during the periods named."

On December 14, 1925, a final report and order reaffirmed the order of March 10, 1924, with some modifications (presently unimportant) in amounts allowed the Brimstone Company from the joint rates.

The Commission evidently undertook to deprive the Brimstone Company of receipts supposed to exceed a fair return on its property and award the same to connecting carriers without evidence tending to show they were in need or had or would receive more or less than a fair return from agreed divisions, or that the joint rates themselves were unfair and unjust, or that the agreed divisions were " unjust, unreasonable, inequitable, or unduly preferential or prejudicial as between the carriers."

Counsel suggest that in addition to facts revealed by studies of the Brimstone Company's affairs, the Commission did consider existing division sheets of joint rates,

volume and distribution of traffic, past division sheets, divisions accorded to the Brimstone Company by the Federal Director-General, also testimony showing competition controlled the agreed divisions. But the very definite command of Section 15(6) required more than that.

Both parties rely upon *New England Divisions Case,* 261 U. S. 184, and *United States* v. *Abilene & Southern Ry. Co.* 265 U. S. 274.

The first involved an order granting larger divisions to New England roads. We there recognized the necessity of evidence " typical in character and ample in quantity to justify the findings made in respect to each division of each rate of every carrier," and declared that with such evidence before it the Commission properly proceeded to consider the importance to the public of the weak carriers and directed divisions intended to effectuate the purpose of Congress to insure adequate transportation service for the whole country, by extending aid to them. Nothing in the opinion supports the view that the Commission may take something from one carrier merely because its net revenue appears unduly large and donate this to another demanding nothing and not in need. Cost of service to one carrier is not the only factor to be considered in determining just divisions.

In the second case the Commission undertook to modify existing divisions for the benefit of a weak road. It did not appear that any matters consideration of which was required by Section 15(6) Transportation Act, 1920, had been ignored, but the evidence concerning some of these things had not been properly presented and therefore the order was annulled. It was there said: (284) " Relative cost of service is not the only factor to be considered in determining just divisions." (291) " The power conferred by Congress on the Commission is that of determining, in respect to each joint rate, what divi-

sions will be just. Evidence of individual rates or divisions, said to be typical of all, affords a basis for a finding as to any one. But averages are apt to be misleading. It cannot be inferred that every existing division of every joint rate is unjust as between particular carriers, because the aggregate result of the movement of the traffic on joint rates appears to be unjust. These aggregate results should properly be taken into consideration by the Commission; but it was not proper to accept them as a substitute for typical evidence as to the individual joint rates and divisions. In the *New England Divisions Case,* tariffs and division sheets were introduced which, in the opinion of the Commission were typical in character, and ample in quantity, to justify the findings made in respect to each division of each rate of every carrier. A like course should have been pursued in the proceeding under review."

The record discloses that before making the challenged order the Commission failed to consider the items definitely specified by Section 15(6). And it must be annulled.

The Court below gave special attention to the second of the above stated objections to the order. This relates only to the retroactive feature. And it approved what we regard as an erroneous view touching readjustments of past divisions announced by the Interstate Commerce Commission in several proceedings. *Pittsburg, etc., Ry. Co.* v. *Pittsburg Company,* 61 I. C. C., 272; *Western Maryland Ry. Co.* v. *Pennsylvania Railroad Co.,* 69 I. C. C. 703, 707; *New York Dock Ry. Co.* v. *Baltimore & Ohio R. R.* 89 I. C. C. 695; and *Marion & Eastern Ry. Co.* v. *C. & E. I. R. R. Co.,* 96 I. C. C. 402.

Prior to 1920, the interstate commerce act contained the following provisions concerning the readjustments of divisions of rates determined and prescribed by the Commission:

" Sec. 15. That whenever, after full hearing  .  .  .  the Commission shall be of opinion that any individual or joint rates or charges whatsoever demanded,  .  .  .    are unjust or unreasonable or unjustly discriminatory, or unduly preferential or prejudicial or otherwise in violation of any of the provisions of this Act, the Commission is hereby authorized and empowered to determine and prescribe what will be the just and reasonable individual or joint rate or rates, charge or charges, to be thereafter observed in such case as the maximum to be charged,  .  .  .    and to make an order that the carrier or carriers shall cease and desist from such violation to the extent to which the Commission finds the same to exist,  .  .  .  *Whenever the carrier or carriers, in obedience to such order of the Commission or otherwise, in respect to joint rates, fares, or charges, shall fail to agree among themselves upon the apportionment or division thereof the Commission may, after hearing, make a supplemental order prescribing the just and reasonable proportion of such joint rate to be received by each carrier party thereto, which order shall take effect as a part of the original order.  .. .. .."*

An explanation of the meaning of and reasons underlying that part of Section 15 italicized above appears in *Morgantown & Kingwood Divisions*, 40 I. C. C. 509, 510:

" The provision dates back to the time when the Commission, under section 15 of the original act, had no authority to deal with rates except upon formal complaint. It now constitutes a part of that section, as amended, which gives us power to require, after hearing either upon formal complaint or in a proceeding instituted on our own motion, the establishment and maintenance of joint rates lower than the aggregate of the intermediate rates or joint rates already in effect, or proposed by the carriers in tariffs under suspension.   It does not come into play until, as a condition precedent, the Commission has made some re-

quirement after full hearing. The reason therefor, as we understand it, is to provide a means of determining which carrier, or to what extent each carrier, shall bear an enforced reduction or participate in an approved increase in the existing or proposed through charge. In other words, the Commission, in creating a joint rate or in reducing a joint rate below what had been established voluntarily or is proposed by the carriers, having brought about a situation different from that as to which their. agreement applied and not in contemplation when the agreement was made, is to have the power to complete what it has undertaken, in case the carriers themselves do not find it possible to agree upon the divisions of the new rate."

" The language of the act [1917] seemed to indicate that the authority was to be exercised only when the parties failed to agree among themselves, and only in supplement to some order fixing the rates." *New England Divisions Case,* 261 U. S. 194.

The occasion for the changes incorporated in Section 15(6)—Act 1920—were pointed out before the House Committee by Interstate Commerce Commissioner Clark, July 16, 1919 (House Hearings, Return of Railroads, etc., Vol. 1, page 29). He said—

" There has been a good deal of difference of opinion, both inside and outside of the commission, as to its powers under the present act. The act now authorizes the commission to establish joint rates and says that if the carriers are not able to agree on a division of the rates so prescribed, the commission may determine those divisions and its decision relative thereto shall become effective as a part of the original order and as of the date upon which the rates became effective. But there have come up questions as to divisions of rates which had not been prescribed by the commission and which had become unsatisfactory to one or possibly more than one carrier.

The commission originally held that it did not have jurisdiction to prescribe the divisions of a joint rate that had not been prescribed by it. [*Morgantown & Kingwood Divisions, supra*] Thereafter, the dissatisfied carrier could bring that question at issue by filing a revocation of its concurrence in the rates, or if it happened to be a carrier that published the rates, by filing a cancellation of them. That was frequently protested, often suspended by the commission, and upon hearing it developed that the only difficulty was their differences as to divisions of rates. Requiring them by order to continue the rates was, in effect, establishing those rates as joint rates, and we thereupon proceeded to prescribe the divisions, if they could not agree.

" Later, by a majority vote, the commission decided that it had power to prescribe the divisions, even if it had not prescribed the rates [*Morgantown & Kingwood Divisions*, 49 I. C. C. 540]; but that has not as yet come to rest through any final adjudication.

" Under this amendment the commission would be authorized to prescribe the divisions of the joint rates, fares, and charges as between the carriers, whether it prescribed the rates or not, and it is provided that if it be a rate, fare, or charge that has been prescribed by the commission, it may then, by order, make its division of that rate retroactive to the date upon which the rate prescribed by it became effective; but as to rates not prescribed by the commission, its order prescribing the divisions of the rate would be effective only from the effective date of the order."

Reporting in behalf of the House Committee—(Nov. 10, 1919, H. R. Vol. 2, Reports on Public Bills)—Chairman Esch said:—

" Section 417 amends section 15 of the commerce act so as to give the commission power not only to fix the maxi-

mum rate, but to fix the particular rate to be charged, or the maximum, or the minimum, or the maximum and minimum.  . . .

"The amendment also increases the powers of the commission in regard to making of through routes and joint rates, authorizing it to prescribe the joint rate or the maximum, or the minimum, or the maximum and minimum.  The commission is authorized to prescribe just and reasonable divisions of joint rates among the several carriers and where the joint rate was fixed by the commission and the divisions are found to have been unjust, the commission may determine what would have been the just division thereof, and require adjustment to be made."

Section 15(6) should be construed in the light of the recognized difficulties.  Under the earlier act a clear distinction was made between joint rates "agreed upon" and those "determined and prescribed" by the Commission after full hearing "to be thereafter observed."  The Commission had power to declare proper divisions of those in the latter category by order "which shall take effect as part of the original order"—that is from the date the rate was prescribed.  Whether it could determine divisions of agreed rates for the future was not clear; but certainly it could not require readjustments of divisions of such rates for past periods.  *Morgantown & Kingwood Divisions*, 40 I. C. C. 509, 49 I. C. C. 540, 551.  Section 15(6) established the right to prescribe future divisions of agreed rates, but we think the studied purpose was to grant no power to require readjustments of past receipts from agreed joint rates.  Theretofore power in respect of past divisions existed only when rates had been determined and prescribed after full hearing—that is where the commission had passed upon the reasonableness of the rate and required observance.  Obviously a carrier may have

assented to a through rate only because of the divisions accorded to it: to permit the Commission to change this arrangement as to past transactions would be exceedingly harsh if not wholly unreasonable. Ordinarily, divisions of a particular rate are not of public interest if the rate itself is reasonable. Probably aware of hardships under the old rule, the new act shortened the time during which readjustment might be required—limited its beginning to the commencement of investigation or filing of complaint.

In support of the retroactive provision of the present order counsel say that joint rates between the Brimstone Company and connecting carriers were made under authority of *Ex Parte 74,* 58 I. C. C. 220, and *Matter of Reduced Rates,* 68 I. C. C. 676, and therefore were " established pursuant to a finding or order of the Commission." But mere general permission or suggestion concerning rates for all carriers, without consideration of the reasonableness of any particular rate, is not the " finding or order " referred to by Section 15(6). We think that refers to one which, after full hearing, determined and prescribed a rate thereafter to be observed. The contrary view would place substantially all presently existing rates in the class with particular rates established by order of the Commission after full hearing, subject them to retroactive adjustments, and thus destroy the practical value of the distinction which Congress carefully preserved.

The power to require readjustments for the past is drastic. It may reasonably exist in cases where the particular rate has been approved by the Commission after full hearing: it ought not to be extended so as to permit unreasonably harsh action without very plain words. The general findings and permission of Ex Parte 74 and Matter of Reduced Rates did not approve or fix any particular rate and certainly did not determine and prescribe the rates divisions of which are here under consideration.

Neither case approved " any specific rate as reasonable in itself or as properly adjusted with respect to other rates nor did it justify in advance any rate which might be published as a result thereof." In them the Commission was dealing with the whole body of rates throughout the country—was looking at the general level of all rates and the propriety of the rates to which the Brimstone Company was party was not the subject of particular investigation or consideration. See *Morgantown & Kingwood Divisions,* 40 I. C. C. 511; *Globe Soap Co.* v. *A. & S. Ry. Co.,* 40 I. C. C. 121; *Steel & Tube Co.* v. *Director General,* 61 I. C. C. 526.

Section 15(1) Transportation Act, 1920, authorizes the Commission, after full hearing, to determine and prescribe joint rates to be thereafter observed. Section 15 (3) permits the Commission, after full hearing, to establish joint rates " and the divisions of such rates, fares or charges as hereinafter provided." And Section 15 (6) authorizes readjustments of divisions already received only when the joint rate was established pursuant to a finding or order of the Commission. Such finding or order must have been under Section 15(1) or (3)—after full hearing in respect to the specific rate. This construction will insure compliance with the purpose of Congress by requiring the Commission, upon full hearing, to pass upon the particular rate before divisions for the past can be directed. Mere permission to increase or diminish all rates according to the general needs of carriers throughout the country is not enough.

The decree below must be reversed. The cause will be remanded there for further proceedings in conformity with this opinion.

*Reversed.*

Mr. Justice Holmes and Mr. Justice Brandeis dissent.