BALTIMORE & O. R. CO. et al. v. UNITED STATES.

District Court, D. New Jersey.

Sept. 20, 1930.

604

Before DAVIS, Circuit Judge, and RUN-YON and AVIS, District Judges.

Henry S. Drinker, Jr., of Philadelphia, Pa. (Frank Bergen, of Newark, N. J., of counsel), for appellants.

Elmer B. Collins, of Washington, D. C., for the United States.

Parker McCollester and Lord, Day & Lord, all of New York City, for respondent Hoboken Mfrs.' R. Co.

J. Stanley Payne, of Washington, D. C., for respondent Interstate Commerce Commission.

RUNYON, District Judge.

This proceeding is an appeal from an order of the Interstate Commerce Commission, issued May 7, 1929, but made retroactive to November 5, 1927, and presents for settlement the question as to whether or not, having issued its order under section 15(6) of the Interstate Commerce Act as amended (49 USCA § 15(6), and fixing, for the first time, as between connecting carriers, divisions of through rates, which said order was made in the absence of certain evidence necessary to be considered by the Commission in fixing such rates, and therefore failed to meet the statutory requirements, the Interstate Commerce Commission, after hearing testimony, subsequently given and bearing upon several prescribed points, may make a new order, providing, among other things, that it should become effective retroactively as of the date of the original order.

The order in question increased from 5¼ cents per hundred pounds to 22 cents per hundred pounds the division of Hoboken Manufacturers' Railroad on raw silk moved on through rates from the Pacific Coast.

The Hoboken Manufacturers' Railroad Company lies entirely within the confines of Hudson county, N. J., and in reality is a switching road which connects with the termini of various trunk line roads, and delivers freight from such roads to their respective consignees.

In the original presentation of its claim to the Interstate Commerce Commission, the Hoboken Railroad included testimony designed to show the cost incurred by it in performing its services, and which may be summarized as follows:

| | |
|---|---|
| Switching | 3.73 |
| Terminal Insurance | 11.25 |
| Policing | 1.25 |
| Unloading and delivery | 6.00 |
| | 22.23 cents |

The testimony shows that the two principal items of cost, viz., for terminal insurance 11.25 cents, and for unloading and delivery, 6 cents, came as the result of an arrangement existing between the Hoboken Railroad Company and the United States Testing Company, whereby the testing company, as agent for the Hoboken Railroad Company, performed the services of unloading the silk and delivering it to the consignees.

The testing company engaged in the business of testing and classifying raw silk, had moved its plant to a site along the route of the Hoboken Railroad Company, and had made the arrangement above mentioned, whereby all raw silk consigned for delivery on the Hoboken Railroad was to be delivered at the testing company's warehouse, where the unloading took place, and from which point delivery to consignees was made. For this service, the Hoboken Railroad agreed to pay the testing company the 6 cents per hundred pounds above noted.

And although the insurance furnished by the trunk lines for the silk provides a term extending 48 hours beyond the arrival of the car at destination, it nevertheless terminates immediately upon the discharge of the car.

The unloading the silk by the testing company, as aforesaid, constitutes a discharge of the car, and the insurance accordingly ends, necessitating the negotiation of additional insurance by the Hoboken Company, pending delivery to the consignees, at a cost of 11.25 cents per 100 pounds.

The silk in question came over the trunk lines from the Pacific Coast, and the total freight charge per 100 pounds for the entire distance to the point of delivery was $9. Of this amount, the roads operating west of the Mississippi received 72½ per cent., or $6.-52½, and the roads east of the Mississippi received 27½ per cent., or $2.47½.

It was in order to obtain a larger percentage of the $9 freight charge that the Hoboken Railroad Company instituted its claim,

a procedure in which the testing company intervened and offered testimony.

The testimony offered at the hearing which preceded the original order of November 5, 1927, was narrow in its scope, and, as we view it, fell far short of a compliance with the terms of the act. It seems to have been based altogether, so far as the Hoboken Railroad's interests were concerned, upon the allegation that the railroad needed the additional revenue, and without any reference to the services performed by the trunk lines, or their condition, efficiency, and need of revenue. In other words, its point of view was essentially parochial, rather than all embracing, as contemplated in the statute.

■ Furthermore, the Commission in its original order, entered November 5, 1927, made its provisions retroactive as of August 6, 1926, the date of filing the complaint.

This order, because of the defects heretofore noted, as well as because of its retroactive feature, to which later reference will be made, we believe was, from its inception, void and of no legal effect.

It was some months after the making of this original order, or on February 20, 1928, that the Supreme Court decided the case of Brimstone R. R. Co. v. United States, which appears in 276 U. S. 104, 48 S. Ct. 282, 285, 72 L. Ed. 487. In this case the court, speaking through Mr. Justice McReynolds, held void an order of the Interstate Commerce Commission, changing divisions of through rates without evidence concerning matters prescribed in section 15(6) of the act, and likewise stated that such a division order as to rates not theretofore prescribed by the commission might not, in view of the express terms of section 15(6), be made retroactive. In part, Mr. Justice McReynolds spoke as follows:

"The record discloses that before making the challenged order the Commission failed to consider the items definitely specified by section 15(6). And it must be annulled. * * *

"In support of the retroactive provision of the present order counsel say that joint rates between the Brimstone Company and connecting carriers were made under authority of Ex parte 74, 58 I. C. C. 220, and Matter of Reduced Rates, 68 I. C. C. 676, and therefore were 'established pursuant to a finding or order of the Commission.' But mere general permission or suggestion concerning rates for all carriers, without consideration of the reasonableness of any particular rate, is not the 'finding or order' referred to by section 15(6). We think that refers to one which, after full hearing, determined and prescribed a rate thereafter to be observed. The contrary view would place substantially all presently existing rates in the class with particular rates established by order of the Commission after full hearing, subject them to retroactive adjustments, and thus destroy the practical value of the distinction which Congress carefully preserved."

In view of this decision, the Commission ordered a rehearing of the Hoboken Railroad Case, which was held on July 13, 1928, and at which time detailed evidence was introduced as to the various subjects called for by section 15(6).

■ As a result of this hearing, and upon the record made therein, the Commission entered a new order dated May 7, 1929, the terms of which accorded the same allowance to the Hoboken Railroad Company as that attempted in the original order of November 5, 1927. In this order also was incorporated a retroactive provision, making its terms effective as of December 5, 1927, despite the fact that the evidence necessary to support such order did not come into existence until the effective date had long since passed.

A further order was made by the Commission on February 4, 1930, effective March 10, 1930, prescribing the same division and rates for the future as those theretofore found by said body, and once more the Commission acted retroactively in seeking to confirm the orders of November 5, 1927, and May 7, 1929, regarding shipments undertaken prior to March 10, 1930.

Section 15(6) of the act reads as follows: "Whenever, after full hearing upon complaint or upon its own initiative, the commission is of opinion that the divisions of joint rates, fares, or charges, applicable to the transportation of passengers or property, are or will be unjust, unreasonable, inequitable, or unduly preferential or prejudicial as between the carriers parties thereto (whether agreed upon by such carriers, or any of them, or otherwise established), the commission shall by order prescribe the just, reasonable, and equitable divisions thereof to be received by the several carriers, and in cases where the joint rate, fare, or charge was established pursuant to a finding or order of the commission and the divisions thereof are found by it to have been unjust, unreasonable, or inequitable, or unduly preferential or prejudicial, the commission may also by order determine what (for the period subsequent to

the filing of the complaint or petition or the making of the order of investigation) would have been the just, reasonable, and equitable divisions thereof to be received by the several carriers, and require adjustment to be made in accordance therewith. In so prescribing and determining the divisions of joint rates, fares and charges, the commission shall give due consideration, among other things, to the efficiency with which the carriers concerned are operated, the amount of revenue required to pay their respective operating expenses, taxes, and a fair return on their railway property held for and used in the service of transportation, and the importance to the public of the transportation services of such carriers; and also whether any particular participating carrier is an originating, intermediate, or delivering line, and any other fact or circumstance which would ordinarily, without regard to the mileage haul, entitle one carrier to a greater or less proportion than another carrier of the joint rate, fare or charge." It thus appears that this section prescribes five features which shall go to make up the "full hearing" declared therein as necessary for the Commission to have prior to its award and division of joint rates, fares, or charges.

These features to which the Commission must give due consideration, and concerning which testimony must be taken, are as follows:

1. The efficiency with which the carriers concerned are operated.

2. The amount of revenue required to pay their respective operating expenses, including taxes, and at the same time allow them a fair return on their property held and used for purposes of transportation.

3. The importance to the public of the transportation furnished by the carriers.

4. As to whether any particular participating carrier is an originating, intermediate, or delivering line.

5. Any other fact or circumstance which would ordinarily, regardless of mileage haul, entitle one carrier to a greater or less proportion than another carrier of the joint rate, fare, or charge.

In its second hearing, the Commission received testimony on each of the foregoing five points and thereupon entered its new order, bearing date May 7, 1929, which is the order from which appeal has been taken.

This order, as we view it, based upon the hearing which preceded it, might have fulfilled the intent of its makers, but for its retroactive features.

Fixing the same division to the Hoboken Company as had obtained in its first order, the Commission thereupon proceeds in its attempt to make the second order retroactive so as to become effective on December 5, 1927, thirty days after the date of the original order of November 5, 1927; endeavoring in this way to comply with that provision of the law which provides that an order of the Commission as to division of rates, et cetera, shall not take effect within thirty days after its entry.

We thus have presented a situation wherein an order, which by reason of its evidential background might, irrespective of all other considerations, have accomplished its purpose for the future, yet saddled with a proviso that its terms should become effective as of a date long preceding the taking of the testimony necessary for its being, and harking back to and attempting to revitalize a prior order, which, builded on a faulty groundwork, was altogether null and void.

It appears to us that the insertion of this retroactive provision has served to nullify and make void the Commission's second order of May 7, 1929.

A third order was made and entered by the Commission on February 4, 1930, providing, in part, that on and after March 10, 1930, the Hoboken Railroad Company should receive the 22-cent division per hundred pounds, out of the joint east-bound transcontinental rates on silk from points on the Pacific Coast to destinations on the line of complainant at Hoboken, N. J., to be apportioned among the lines participating in the revenues derived from such traffic east of Chicago and related gateways.

This order, we understand, is accepted by the plaintiffs because of the fact that it becomes effective not less than thirty days after its entry.

Despite this acceptance, we feel constrained to say that it is only by reason of its terminology and the distinct division between the terms thereof above noted and a later provision attempting to indorse in all particulars the provisions of the two prior orders with respect to the division of rates on any shipments delivered to or transported by complainant prior to March 10, 1930, that this third order does not merit the charges laid against its predecessors, since, in our opinion, the retroactive character of the lat-

ter part of said order renders that portion thereof null and void.

We are here construing a statute, and the rights and remedies of the railroad are determined by a strict interpretation of the provisions of that statute, and must be weighed in the balances which that statute provides.

The statute's literal fulfillment constituting a sine qua non to the proper solution of the question presented, the possible innate justice of the Commission's findings cannot avail, unless based upon the statute's requirements.

Being of the opinion that the Commission erred and violated the provisions of the statute in attempting to make valid a situation which was clearly invalid through the insertion of a retroactive feature in its order of May 7, 1929, we conclude that such order must be set aside and held for naught.