## ATLANTIC COAST LINE R. CO. et al. v. DELAWARE & H. R. CORP.

## POWELL et al. v. BOSTON & M. R. R. et al.

### Nos. 100, 101.

Circuit Court of Appeals, Second Circuit.

Dec. 14, 1936.

722

Miller, Owen, Otis & Bailly, of New York City (Edward C. Bailly and Walter H. Brown, Jr., both of New York City, of counsel), for plaintiffs-appellants.

Robert C. Hardy, of New York City, for defendants-appellants.

Thomas L. Ennis, of New York City, (Joseph Rosch, of Albany, N. Y., and Carleton W. Meyer, of New York City, of counsel), for defendant Delaware & Hudson R. Corporation.

Whalen, McNamee, Creble & Nichols, of Albany, N. Y. (Charles E. Nichols, of Albany, N. Y., of counsel), for appellee Boston & Maine R.R.

Before MANTON, L. HAND, and SWAN, Circuit Judges.

MANTON, Circuit Judge.

These cases will be considered in one opinion.

Appellants Powell and Anderson were operating the Seaboard Air Line Railway Company as receivers and sued appellees, as did the Atlantic Coast Line Railroad Company and the Southern Railway Company, for an accounting of their share of joint freight rates, over the entire route from points in Florida to northern points, for citrus fruit transportation between November 9, 1928, and November 22, 1930. The appellees each collected the charges for the shipments from point of origin to point of destination and made divisions of the freight rates during this period without consent or agreement of the appellants.

Prior to November 9, 1928, on the transportation of citrus fruits, the freight rates were divided pursuant to an agreement made by all the various connecting carriers as permitted by section 1(4) of the Interstate Commerce Act, as amended, 41 Stat. 474, § 400, 49 U.S.C.A. § 1(4). The appellees in dividing and distributing the freight money during the period from November 9, 1928, to November 22, 1930, did not follow that agreement.

In 1928 the Commission ordered a change in the joint rates on citrus fruits, effective November 9, 1928, and the southern group of railroads assumed that divisions would be adjusted on a percentage basis as on all the previous occasions of changes in rates. On the first monthly settlement of the new rates, the northern group of railroads, instead of adjusting divisions on the former basis, reduced the divisions allotted to the appellants. There was some negotiation looking to an adjustment of this dispute, and it was not until November 22, 1930, that a complaint was filed by the appellants with the Interstate Commerce Commission asking for a more equitable division of the freight rates. Section 15(6) of the Interstate Commerce Act, as added by Transportation Act, c. 91, § 481, 41 Stat. 486, 49 U.S.C.A. 15(6). After hearings, the Commission ordered a formula more favorable to the southern

group. Atlantic Coast Line R. Co. v. Arcade & Attica Railroad Corp. et al., 194 I.C.C. 729; Id., 198 I.C.C. 375. A three-judge court upheld this order (Baltimore & O. R. Co. v. United States [D.C.] 9 F.Supp. 181), and the Supreme Court affirmed (298 U.S. 349, 56 S.Ct. 797, 80 L. Ed. 1209). The Commission, limited by section 15(6) of the act, upheld appellants' contention that the divisions made by the northern group were unfair, and by order of June 1, 1934, made the rates fixed by its formula retroactive as of November 22, 1930.

These suits seek accountings for the period from November 9, 1928, to November 22, 1930, a time before the complaint and during which the Interstate Commerce Commission could not fix a rate on a complaint filed November 22, 1930. Appellants contend that during this period they were attempting to agree with the appellees on divisions pursuant to section 1(4) of the Interstate Commerce Act; further, that their application to the Commission and the Commission's findings and decision as to the proper division of rates for the period commencing November 22, 1930, sufficed to confer jurisdiction upon the District Court to determine the division of rates for the earlier period in suits for accountings.

■ Prior to federal regulation of the transportation of interstate shipments, where one carrier had collected charges for the joint service performed by it and another connecting carrier, the latter was entitled to a fair division of such joint charge and, if the collecting carrier failed to account, an action would lie to compel such an accounting. But from the passage of the Interstate Commerce Act previously existing common-law remedies, inconsistent with the statute, were supplanted. Texas & Pacific R. Co. v. Abilene Cotton Oil Co., 204 U.S. 426, 27 S.Ct. 350, 51 L.Ed. 553, 9 Ann.Cas. 1075; Robinson v. Baltimore & O. R. Co., 222 U.S. 506, 32 S.Ct. 114, 56 L.Ed. 288.

■ Section 9 of the Interstate Commerce Act (49 U.S.C.A. § 9) gives parties claiming damages for alleged violation of the act the election between suit in court and complaint before the Commission. Section 22, as amended (49 U.S.C.A. § 22) preserves existing remedies at common law or by statute. But the jurisdiction residing in the district court has limitations. It has been settled since Texas & Pacific

R. Co. v. Abilene Cotton Oil Co., supra, that the question of reasonableness of rates or division of joint rates will not be considered by the courts before application has been made to the Commission. Likewise, in a claim for equitable divisions by a connecting carrier, as in respect to numerous similar matters, the courts will not entertain a suit unless and until the Interstate Commerce Commission has made a finding and determination of the question involved. Terminal Railroad Ass'n v. United States, 266 U.S. 17, 45 S.Ct. 5, 69 L.Ed. 150; Board of Railroad Com'rs v. Great Northern R. Co., 281 U. S. 412, 50 S.Ct. 391, 74 L.Ed. 936; Norge Corp. v. Long Island R. Co., 77 F.(2d) 312 (C.C.A.2). In Great Northern R. Co. v. Merchants' Elevator Co., 259 U.S. 285, 42 S.Ct. 477, 479, 66 L.Ed. 943, the doctrine was announced that:

"Whenever a rate, rule, or practice is attacked as unreasonable or as unjustly discriminatory, there must be preliminary resort to the Commission. Sometimes this is required because the function being exercised is in its nature administrative in contradistinction to judicial. But ordinarily the determining factor is not the character of the function, but the character of the controverted question and the nature of the enquiry necessary for its solution. To determine what rate, rule or practice shall be deemed reasonable for the future is a legislative or administrative function. * * * It is required because the enquiry is essentially one of fact and of discretion in technical matters; and uniformity can be secured only if its determination is left to the Commission. Moreover, that determination is reached ordinarily upon voluminous and conflicting evidence, for the adequate appreciation of which acquaintance with many intricate facts of transportation is indispensable."

In Atlantic Coast Line R. Co. v. Florida, 295 U.S. 301, 55 S.Ct. 713, 79 L.Ed. 1451, relied on by the appellants, the Interstate Commerce Commission required certain intrastate rates that had been ordered by the Railroad Commission of Florida to be raised because of discrimination against interstate commerce. The order, held valid by a three-judge court, was allowed to go into effect pending appeal and the railroads began to collect the increased tariffs. Two years later the Supreme Court reversed and set aside the

order because of a formal defect. The state of Florida and shippers who paid the higher rate sued in equity to compel the railroads to make restitution on the basis of the Florida Commission rate. The District Court (Florida v. U. S., 11 F.Supp. 36) held that restitution should be awarded. This was reversed by the Supreme Court, which denied restitution since the Commission's order was not a nullity but merely "voidable." Only the period of time within the Commission's jurisdiction and covered by its order was involved.

█ A district court is powerless to fix reasonable rates but may merely adjudge them to be confiscatory and enjoin their enforcement. It may not prescribe a different rate, a function which is legislative and intrusted to the rate-making body established by the Interstate Commerce Commission Act. Section 15(6) clearly indicates an intention to limit the operation of retroactive adjustments of divisions. It changed the pre-existing law whereby the Commission had power, as to rates fixed by its orders, to prescribe just and reasonable divisions, retroactive to the effective date of those rates. This change was noted in Brimstone R. & Canal Co. v. United States, 276 U.S. 104, 48 S.Ct. 282, 287, 72 L.Ed. 487, where the court held that the power to fix divisions retroactively must be strictly construed and said:

"Section 15(6) established the right to prescribe future divisions of agreed rates, but we think that the studied purpose was to grant no power to require readjustments of past receipts from agreed joint rates. Theretofore power in respect of past divisions existed only when rates had been determined and prescribed after full hearing. * * * Probably aware of hardships under the old rule, the new act shortened the time during which readjustment might be required—limited its beginning to the commencement of investigation or filing of complaint."

█ It is not enough to say that, because of established principles of equity and common law, a reasonable share of the proceeds of the transportation was due the appellants for the services performed. The remedy conferred by the Interstate Commerce Act and the one by which the appellants' rights are governed defined the procedure by which justice could be obtained. If negotiations under section 1 (4) were fruitless, a complete remedy was available. If the appellants had seasonably applied to the Commission on or before November 9, 1928, when the new rates became effective, the Commission would have had full jurisdiction and could have awarded relief as to all freight divisions which would include the claims in the present suit. Relief was impossible because of failure to comply with the statutory requirement as to filing a complaint. The appellants were timely advised of the effective date, November 9, 1928, of the new rates, and had an opportunity to file their complaint. The fact that the appellants applied to the Commission for all relief which the Commission had power to grant at the time of their application does not excuse a failure to apply opportunely for a determination of the earlier claim.

Reliance upon the dictum of Backus-Brooks Co. v. Northern Pac. R. Co., 21 F.(2d) 4, 17 (C.C.A.8), is futile. In that case, the court dismissed the plaintiff's suit for the recovery of reasonable division because there had been no prior recourse to the Interstate Commerce Commission. It proceeded to say that, after fixation of reasonable and equitable divisions of the joint rate by the Commission, the court, in the exercise of a proper judicial function, might grant relief for past wrongs. With this dictum we are unable to agree, in view of the authorities by which prior findings of the Commission permit recourse to the courts only when they cover the precise period of time in controversy. The appellants lost their rights by failure to file a timely complaint with the Commission covering the disputed period and may not now assert such rights in suits for accountings.

Decrees affirmed.