The **BALTIMORE AND OHIO RAIL-
ROAD COMPANY et al., Plaintiffs,**

v.

The **ALABAMA GREAT SOUTHERN
RAILROAD COMPANY et al.,
Defendants.**

**Civ. A. No. 906-72.**

United States District Court,
District of Columbia.

Oct. 31, 1972.

Harry G. Silleck, Jr., New York City, for plaintiffs.

Richard J. Flynn, Washington, D. C., for defendants.

Jay W. Freedman, for Intervenors, Southern Governors' Conference and Southeastern Assn., of Regulatory Utility Commissioners.

## MEMORANDUM OPINION

RICHEY, District Judge.

This cause came before the Court on October 26, 1972, for oral hearing on the Southern Governors' Conference's and the Southeastern Association of Regulatory Utility Commissioners' Motion to Intervene, and on the Motion of the defendants herein for Summary Judgment. After careful consideration of the written pleadings, the Memoranda of Points and Authorities in support thereof, and the oral arguments of the parties, the Court orally granted both the Motion to Intervene and the Motion for Summary Judgment. The purpose of this Opinion is to articulate the Court's reasons for granting the defendants' Motion for Summary Judgment.

## I. *Facts*

Plaintiffs brought this action as a class action under Rule 23 of the Federal Rules of Civil Procedure. Plaintiffs and the majority of the members of plaintiffs' alleged class, hereinafter collectively referred to as the Northern lines, are common carrier railroad companies subject to the Interstate Commerce Act, as amended, 49 U.S.C. § 1, et seq., operating primarily in what is known as the Official Territory, which is essentially the northeastern quadrant of the United States. Defendants and the majority of the members of defendants' alleged class, hereinafter collectively referred to as the Southern lines, are common carrier railroad companies subject to the Act operating primarily in the Southern Territory, which is essentially the southeastern quadrant of the United States.

Each of the nation's railroads serves a finite area within the United States. In order to coordinate the freight service of these individual railroads, joint transportation of freight over the lines of several railroads is required. When two or more railroads participate in the joint carriage of freight the transportation charge is normally paid through a single joint rate which is collected by the railroad making delivery of the freight to the consignee. Settlement with the other participating railroads is normally made on the basis of their respective divisions of the joint rate. The joint rates on Official-Southern freight traffic handled by the Northern and Southern railroads are the result of the voluntary agreement of these railroads to establish such rates.

Since 1953, the Northern lines and the Southern lines have divided joint rates on freight traffic moving between the North and the South on an equal-factor basis, meaning that the divisional factors are the same for both the North and the South for the same length of haul. The equal-factor basis of divisions was established by order of the Interstate Commerce Commission pursuant to its reports in Official-Southern Divisions, 287 I.C.C. 497 (1953); 289 I.C.C. 4 (1953). The Commission ordered the Northern and Southern lines to establish "and thereafter apply" the prescribed divisions and "to abstain from asking, demanding, collecting, or receiving divisions of said joint rates upon other bases than those herein prescribed."

In 1956, the Northern lines filed a petition to reopen the Commission proceedings concerning the division of joint rates, based on the ground that the average costs of rail service in the North were higher than those in the South. The petition was granted, and in 1965, the Commission issued a decision prescribing inflated divisions for the Northern lines. Official-Southern Divisions, 325 I.C.C. 1 (1965). However, this order was set aside for lack of substantial evidence by a three-judge court in Aberdeen & Rockfish R. Co. v. United

States, 270 F.Supp. 695 (E.D.La.1967), which was affirmed by the Supreme Court in Baltimore & Ohio R. Co. v. Aberdeen & Rockfish R. Co., 393 U.S. 87, 89 S.Ct. 280, 21 L.Ed.2d 919 (1968). In April, 1969, the District Court, upon remand from the Supreme Court, set aside the 1965 order of the Commission and remanded the case to the Commission for further hearings.

In 1970, the Commission sought to reinstate its order prescribing inflated Northern divisions in modified form (Official-Southern Divisions, 337 I.C.C. 75), but the order was set aside by the same three-judge court in an unpublished order dated October 29, 1970, because the Commission had failed to hold hearings as previously ordered. No appeal was taken from this decision, and on August 10, 1971, the Commission terminated its investigation of North-South divisions without prejudice to the right of any party to proceed by filing a new complaint.

On March 17, 1972, the Northern lines filed a Complaint before the Commission in a proceeding designated as I.C.C. Docket No. 35585, again seeking inflated divisions for the future for rail service in the North on the theory that it costs more to provide such service in the North than it does in the South. The proceedings before the Commission will be conducted pursuant to Section 15(6) of the Interstate Commerce Act, 49 U.S.C. § 15 (6), the pertinent portions of which are quoted below.[1] It is conceded, however, that because the joint rates to which the divisions apply were not established pursuant to a finding or order of the ICC within the meaning of Section 15(6), the statute provides the Commission with no authority to grant retroactive relief for allegedly disproportionate divisions of the rates on North-South traffic for any period prior to the effective date of a Commission order prescribing new divisions for the future. Accordingly, the plaintiffs filed a Complaint in this Court seeking (1) reference to the Interstate Commerce Commission of the question whether the existing equal-factor divisions of agreed joint rates will have been unjust, unreasonable and inequitable during the period between January 1, 1972, and the effective date of an Interstate Commerce Commission order in Docket No. 35585; and (2) an accounting, damages and interest in the event the Interstate Commerce Commission were to find that the equal-factor divisions were unjust, unreasonable and inequitable during the period between January 1, 1972, and the effective date of an order in Docket No. 35585.

## II. *Contentions of the Parties*

Plaintiffs take the position that this Court has the power to order the Southern lines to pay damages for any inequitable divisions found by the Commission to exist for the period from January 1, 1972, to the effective date of a new order of the Commission as regards the divisions of joint rates. Basically, the Northern lines argue (1) that such power is conferred upon the Court by the Interstate Commerce Act, by virtue of defendants' violation of Section 1(4)

1. 49 U.S.C. § 15(6) provides in pertinent part: "Whenever, after full hearing upon complaint or upon its own initiative, the Commission is of opinion that the divisions of joint rates, fares, or charges, applicable to the transportation of passengers or property, are or will be unjust, unreasonable, inequitable, or unduly preferential or prejudicial as between the carriers parties thereto (whether agreed upon by such carriers, or any of them, or otherwise established), the Commission shall by order prescribe the just, reasonable, and equitable divisions thereof to be received by the several carriers, and in cases where the joint rate, fare, or charge was established pursuant to a finding or order of the Commission and the divisions thereof are found by it to have been unjust, unreasonable or inequitable, or unduly preferential or prejudicial, the Commission may also by order determine what (for the period subsequent to the filing of the complaint or petition or the making of the order of investigation) would have been the just, reasonable, and equitable divisions thereof to be received by the several carriers, and require adjustment to be made in accordance therewith."

which requires that carriers maintain "just, reasonable, and equitable divisions," and by virtue of Section 8 which makes carriers liable to any persons damaged by violation of the duties enumerated in the Act, and (2) that they are entitled to such divisions under common law principles applicable to partnerships and joint ventures, such common law remedies being preserved under Section 22 of the Act.

The defendants' position is that the Court does not have the power to provide plaintiffs with any retroactive relief under the theories (1) that a judicial remedy is inconsistent with the policy of Congress expressed in Section 15(6) of the Act, (2) that an order of the Commission exists which precludes the relief sought, and (3) that there is an order of another court in another proceeding which bars the relief requested.

### III. *Discussion*

Whether plaintiffs have properly stated a claim for readjustments of divisions of joint rates voluntarily established by the carriers with respect to shipments moving prior to the effective date of a Commission order in a proceeding now pending to prescribe new divisions is a question of law. The parties have conceded that there is no genuine issue of material fact involved in the instant case.

Section 15(6) of the Interstate Commerce Act, the relevant provisions of which are quoted above, is the pertinent portion of the Act relating to the readjustment of divisions of joint rates. The more general provisions relied on by the plaintiffs as the basis for their asserted claim must be read in the context of the specific Congressional purpose expressed in Section 15(6).

The decision of the Supreme Court in Brimstone Railroad Co. v. United States, 276 U.S. 104, 48 S.Ct. 282, 72 L.Ed. 487 (1928), is the definitive interpretation of Section 15(6), and has not been challenged in any subsequent decision. In *Brimstone,* the Court held that under Section 15(6) the Interstate Commerce Commission has no power to require the retroactive adjustment of divisions of voluntarily established rates. The decision was based upon the Court's holding that Section 15(6) reflects a "studied purpose" of Congress to preclude retroactive adjustments of divisions of voluntarily established rates:

"Section 15(6) established the right to prescribe future divisions of agreed rates, but we think the studied purpose was to grant no power to require readjustments of past receipts from agreed joint rates. Theretofore power in respect of past divisions existed only when rates had been determined and prescribed after full hearing—that is where the Commission had passed upon the reasonableness of the rate and required observance. Obviously a carrier may have assented to a through rate only because of the divisions according to it; to permit the Commission to change this arrangement as to past transactions would be exceedingly harsh, if not wholly unreasonable." *Id.* 276 U.S. at 121–122, 48 S.Ct. at 287.

Plaintiffs have cited the case of Atlantic Coastline R. Co. v. Baltimore & Ohio R. Co., 12 F.Supp. 711 (D.Md. 1935), 16 F.Supp. 647 (D.Md.1936), to support their claim for judicial relief. That case, however, involved the divisions of rates which had been established pursuant to an order of the Commission as provided in Section 15(6), not agreed rates. The Court in *Atlantic Coastline* cited the *Brimstone* case and recognized that in *Brimstone* "the court was dealing with the readjustment of rates previously agreed upon but here the situation is quite different." 12 F.Supp. 711, at 713. In bringing this action, the plaintiffs have failed to distinguish between the divisions of rates made pursuant to an order of the Commission and divisions of carrier made rates. This failure is contrary to the express holding in *Brimstone* that:

"The contrary view would place substantially all presently existing rates in the class with particular rates established by order of the Commission after full hearing, subject them

to retroactive adjustments, and thus destroy the practical value of the distinction which Congress carefully preserved.

"The power to require readjustment for the past is drastic. It may reasonably exist in cases where the particular rate has been approved by the Commission after full hearing; it ought not to be extended so as to permit unreasonably harsh action without very plain words." 276 U.S. 104, at 122, 48 S.Ct. 282 at 287.

This holding of the Supreme Court must necessarily concern the power of the courts as well as the power of the Commission for the reason that the effect of the plaintiffs' claim, if enforced in this Court, would be to "destroy the practical value of the distinction which Congress carefully preserved."

■■ More recent decisions of the Supreme Court dealing with the availability of judicial remedies in situations involving statutory provisions which are less clear than the provisions of Section 15(6) help to confirm the continuing validity of the *Brimstone* decision. See T. I. M. E. Inc. v. United States, 359 U.S. 464, 79 S.Ct. 904, 3 L.Ed.2d 952 (1959); Montana-Dakota Utilities Co. v. Northwestern Public Service Co., 341 U.S. 246, 71 S.Ct. 692, 95 L.Ed. 912 (1951); Hewitt-Robbins, Inc. v. Eastern Freight-Ways, Inc., 371 U.S. 84, 83 S.Ct. 157, 9 L.Ed.2d 142 (1962). These cases establish the principle that the availability of a judicial remedy with respect to matters within the primary jurisdiction of an administraive agency depends upon the intent of Congress in each situation and that such intent is to be determined on the basis of the relevant provisions of the Act involved. That principle requires a finding by this Court that a judicial remedy involving retroactive adjustment of rates voluntarily established by the carriers is not available under Section 15(6), since the "studied purpose" of Congress in such situations is expressly stated in that Section. That purpose should not be frustrated or circumvented by the courts.

■■ Since the purpose of Congress in Section 15(6) of the Interstate Commerce Act, as set forth in the *Brimstone* decision, precludes a claim for retroactive adjustments of divisions of agreed rates, plaintiffs have no claim cognizable in the courts. There is thus no basis for referral of their claim to the Commission under the doctrine of primary jurisdiction, as that doctrine is applicable only "where a claim is originally cognizable in the courts," and the aid of an administrative agency is necessary or helpful in enforcing such a claim. United States v. Western Pacfic R. Co., 352 U.S. 59, 63–64, 77 S.Ct. 161, 1 L.Ed.2d 126 (1956).

### IV. *Conclusion*

In view of the Court's holding that plaintiffs have failed to state a judicially cognizable claim upon which relief can be granted, it is unnecessary for the Court to reach the issues raised by the other contentions advanced by the defendants to this action. Defendants are entitled to summary judgment, which was entered on October 27, 1972.