## INTER-CITY TRANSP. CO. Inc. et al. v. UNITED STATES et al.

Civ. A No. 10971.

United States District Court
D. New Jersey.
April 13, 1948.

Joseph C. Glavin, Jersey City, N. J., for plaintiffs.

Edward Dumbauld, Special Assistant to the Attorney General, John F. Sonnett, Assistant Attorney General, for defendant United States of America.

Daniel W. Knowlton, Washington, D. C., E. M. Reidy, Washington, D. C., for defendant Interstate Commerce Commission.

Leland Taliaferro, Newark, N. J., William H. Blake, Newark, N. J., for intervenor Public Service Interstate Transportation Company.

James F. X. O'Brien, Newark, N. J., for intervenor Consolidated Interstate Lines, Inc.

Before McLAUGHLIN, Circuit Judge, and FAKE and MEANEY, District Judges.

McLAUGHLIN, Circuit Judge.

Plaintiffs sue to enjoin, set aside, annul and suspend orders of the Interstate Commerce Commission made in the matters of the application of Public Service Interstate Transportation Company Extension— Little Falls, N. J. (M.C. 3647) and of Consolidated Interstate Lines, Inc., common carrier application (M.C. 105683). Public Service and Consolidated have been allowed to intervene in this proceeding.

On January 5, 1945, Public Service applied to the Interstate Commerce Commission for a certificate of public convenience and necessity to operate passenger vehicles between Little Falls, New Jersey, and Union City, New Jersey, over specified routes and with specified intermediate point service. This application was for an extension of a designated service then existing between Union City and New York City, New York. On February 27, 1945, Consolidated applied for a certificate of public convenience and necessity to operate passenger, baggage, express, newspaper and mail service in the same vehicles between Little Falls and New York City over specified routes and serving specified intermediate points.

Plaintiffs filed protests against the granting of the applications as did each of the applicants against the other. Hearings on the Public Service application were had before Joint Board No. 119. Hearings on the application of Consolidated were had before the Commissioner's Examiner. On December 1, 1945, Joint Board No. 119 filed its report and order recommending the denial of the application of the Public Service. On the same date the Commissioner's Examiner filed his report recommending denial of Consolidated's application. Public

Service and Consolidated filed exceptions to the respective recommendations which were reviewed by Division 5 of the Commission. On January 5, 1947, Division 5 filed its report which reversed the findings of the Joint Board and of the Examiner. Pursuant to this an order was entered allowing the applications of Public Service and Consolidated except with respect to operating over the uncompleted portions of the new S-3 highway. Plaintiffs' petition for rehearing was denied December 4, 1947, and promptly thereafter plaintiffs brought this action.

In their first point, plaintiffs argue that the record on which the Commission reversed the recommendations of the Joint Board and of the Examiner was stale, more than nineteen months having elapsed with conditions claimed to have radically changed in the interval. And they assert that the denial of their opportunity to present what they say is the present situation to the Commission was abuse of discretion. In so doing they rely upon Atchison, Topeka and Santa Fe Railway Co. et al. v. United States et al., 1932, 284 U.S. 248, 52 S.Ct. 146, 76 L.Ed. 273. In that case the testimony was concluded in September 1928, and the second petition for rehearing, which alleged the intervening depression, was filed in February 1931. There Chief Justice Hughes did say, 284 U.S. at page 262, 52 S.Ct. at page 150: "In the instant proceeding, the hearing accorded related to conditions which had been radically changed, and a hearing, suitably requested, which would have permitted the presentation of evidence relating to existing conditions, was denied. We think that this action was not within the permitted range of the Commission's discretion, but was a denial of right." The difficulty with this language is that the year following the Atchison decision along came United States v. Northern Pacific Railway Co., 288 U.S. 490, 53 S.Ct. 406, 77 L.Ed. 914, where the application for reopening was based on the same depression and where the three judge district court, which had in effect allowed the reopening, was reversed. The Atchison opinion in that case was held to its own facts. Baltimore & Ohio R. Co. v. United

States, 298 U.S. 349, 56 S.Ct. 797, 80 L.Ed. 1209, followed this same thought, as did St. Joseph Stock Yards v. United States, 298 U.S. 38, 56 S.Ct. 720, 80 L.Ed. 1033. In I. C. C. v. Jersey City, 322 U.S. 503, 64 S.Ct. 1129, 1137, 88 L.Ed. 1420, the question of stale record was before the court with the vital problem of price control against inflation appearing between the closing of the record and the petition for reopening. The court found that "there is no ground for holding that the denial of rehearing constituted an abuse of discretion or amounted to unfairness which would invalidate the Commission's orders." The court again definitely restricted the Atchison case to its own circumstances. It referred to it as the single instance in the history of administrative law where the United States Supreme Court "reversed a Commission for refusing to grant a rehearing on the contention that the record was 'stale.' "

■ So the law as we see it is that if there is evidence to support the Commission's findings the question of rehearing is not a matter of right but of discretion and "the discretion to be invoked was that of the body making the order, and not that of a reviewing body." I. C. C. v. Jersey City, supra, 322 U.S. at page 515, 64 S.Ct. at page 1135.

■ The situation in support of the claim of obsolete record is carefully and ably presented. Nineteen months and some days elapsed between the closing of the testimony on May 21 or 24, 1945, and the decision of Division 5 on January 2, 1947. Unquestionably the ending of hostilities by the fall of 1945 brought about a transition from feverish war activity to the readjustment peacetime period and produced numerous changes in conditions. And were we passing on those facts as a trial court we might view them differently than did the Commission. But that is not our function. We are here to see if there is evidence to support the Commission's allowance of the applications on the ground of public convenience and necessity. We think there is sufficient evidence in this record to justify that action.

That evidence to a large extent came from the public. Officials of the towns along the route, executives of industrial and business concerns in the area, citizens as individuals, were in favor of the Public Service application. At least two of the municipalities concerned had endorsed the application by resolution. A representative of a cemetery, testifying that between 2,500 and 3,000 people visit it during the summer months, supported the service. A traffic expert who had made a survey of the territory involved stated that direct service should result in great development.

Over sixty witnesses from a number of communities which would be served by the line testified in favor of the Consolidated's application. These ranged from the City Engineer of Clifton (a substantial community along the route which had by resolution approved the application), to a lady who goes to New York three times a week and whose husband is a daily commuter. Many such commuters were witnesses. A builder said the service would give his company a new market for two considerable land developments in the vicinity of Little Falls. Another such person in a different locality in effect said that direct transportation to New York would materially and favorably affect his erection of a large number of homes. A representative of a plant that had 45 daily commuters of its own from New York and many others as business callers urged that the service would help them greatly.

■ All in all the witnesses for both applications make a substantial showing for the applications. Some of them at least and what they represent do not seem to have about them the sort of temporary quality that might cause them to vanish with the war. Certainly we cannot fairly say that there was no evidence to support the Commission's decision. That being so, the reopening of the matter was within its own discretion.

■ Plaintiffs second point is that the findings of the Commission are so obscure as to render the resulting order void.

444

.The findings comprise thirteen pages. They consist first of a concise history of the proceedings, a summary of the transportation backgrounds of the applications, detail of the routes sought, highway conditions, running time and schedules. From the evidence, the population feature of the area affected and its transportation service are analyzed. Then the voluminous testimony regarding public convenience and necessity is discussed for several pages, including the objections of Consolidated to the application of Public Service, and the objections of plaintiffs, Inter-City, Garden State and other bus companies to both applications. The Commission then says: "While east of the Passaic River the proposed routes would traverse the well-developed but only partly served communities of Rutherford and Lyndhurst, west of that river they would traverse several well-settled districts separated by areas in which development is now in progress. The present and the prospective development is both industrial and residential in character. Thus, potential interstate bus traffic in the less developed areas already is in process of realization and should continue to increase in the forthcoming years. However, the existing transportation facilities, a combination of intrastate and interstate service requiring from 1 to 1.5 hours each way, cannot be said to be adequate. The public is entitled to direct and expeditious service if it readily can be extended to them. Inter-City Transportation Co., Inc., Extensions-Orient Way and Nutley, N. J., in Lincoln Tunnel Applications, 44 M.C.C. 665, 672. Direct bus service to and from New York City, with the greatly-improved running time estimated by applicants, should help to make the considered areas in New Jersey still more desirable residential sections, as it already has done in other parts of northern New Jersey in the New York metropolitan area. The industrial development already in progress will require an increasing number of residences for the factory employees, members of whose families will undoubtedly desire to travel to and from New York City for employment, business, or pleasure. Situated between and adjacent to Paterson and Passaic on the north and Nutley, Bloomfield and Montclair on the south, it seems clear that direct and expeditious bus service to and from New York City should be an impetus in analogous development of the less-settled areas along the proposed routes. It is clear that the communities on and near the proposed routes would greatly benefit by the establishment of interstate bus service to and from New York City and we are convinced that there is a definite public need for such service."

After finding that each applicant was able to perform the desired operation and that the transportation of passengers, baggage, express, mail and newspapers is a necessary incident to the carriage performance, the Commission then finds that present and future public convenience require the requested services.

On that comprehensive report, as a matter of common justice to the Commission, we must hold that its decision makes sense. Based on a sound foundation of evidence, the Commission concluded that it was doing a progressive, good thing in giving the territory in question the transportation sought; in giving that territory service needed now and for the future. While another fact finding tribunal might possibly arrive at a different conclusion from the facts, the Commission's decision is at least readily understandable.

■ Plaintiffs in their third point urge that Section 1007 (b) of the Administrative Procedure Act[1] governs the decision of the Commission regarding the petition for rehearing and that under it the "supporting reasons" for the ruling must be stated. The complete answer to this for the purposes of this case is that the Act itself was not approved until June 11, 1946. By Section 1011 of the Act, Section 1007 took effect six months after the approval of the Act generally. Section 1011 goes on to say that "no procedural requirement shall be mandatory as to any agency proceeding initiated prior to the effective date of such requirement." The proceeding before us was ini-

1. June 11, 1946, c. 324, § 8, 60 Stat. 242, Title 5 U.S.C.A. Chapter 19.

tiated by the application of the Public Service for the certificate of public convenience and necessity on January 5, 1945. The Consolidated application following shortly thereafter on February 27, 1945. Both of those dates were long prior to the approval of the Administrative Procedure Act.

■ Finally plaintiffs suggest that the Commission's decision contravened the national transportation policy of cooperation with the several states.[2]

The Commission did disagree with the recommendation of the Joint Board which latter had as a member a New Jersey Public Utility Commissioner. It is also true that the Joint Board in the one instance and the Examiner in the other saw the witnesses. Even so, it is the responsibility of the Commission and, as counsel for the latter argues, the Commission has the duty in a proper case of disagreeing with a joint board or one of its own examiners, without any attachment of legal significance thereto. Nelson Brothers Bond & Mortgage Co. (Station W1BO) v. Radio Commission, 289 U.S. 266, 285–286, 53 S.Ct. 627, 77 L.Ed. 1166, 89 A.L.R. 406.

Counsel for the plaintiffs again, in the course of a painstaking, skilled argument, asserts that the underlying purpose of the Interstate Commerce Act with respect to its public convenience and necessity provisions is, as said in Texas & New Orleans Railroad Co. v. Northside Belt Ry. Co., 276 U.S. 475, 479, 48 S.Ct. 361, 362, 72 L.Ed. 661, "to protect [carriers] from being weakened by another carrier's operating in interstate commerce a competing line not required in the public interest." We agree entirely with that, as undoubtedly does the Interstate Commerce Commission. But, in the opinion of the Commission, and with warrant in the record to justify its opinion, that is not the case at bar.

The complaint in this cause will be dismissed.

### Findings of Fact

We find as facts:

1. On January 5, 1945, Public Service Interstate Transportation Company, a New Jersey Corporation, applied to the Interstate Commerce Commission for a certificate of public convenience and necessity to operate passenger vehicles between Little Falls, New Jersey, and Union City, New Jersey, over specified routes with specified intermediate point service. This application was for an extension of a designated service than existing between Union City and New York City, New York.

2. On February 27, 1945, Consolidated Interstate Lines, Inc., a New Jersey corporation, applied for a certificate of public convenience and necessity to operate passenger, baggage, express, newspaper and mail service in the same vehicles between Little Falls and New York City over specified routes and serving specified intermediate points.

3. Plaintiffs filed protests against the granting of said applications, as did each of the applicants against the other.

2. The Interstate Commerce Act, Part 2, September 18, 1940, c. 722, Title 1, Section 1, 54 Stat. 899, 49 U.S.C.A. preceding section 301, declares this to be as follows: "It is hereby declared to be the national transportation policy of the Congress to provide for fair and impartial regulation of all modes of transportation subject to the provisions of this Act, so administered as to recognize and preserve the inherent advantages of each; to promote safe, adequate, economical, and efficient service and foster sound economic conditions in transportation and among the several carriers; to encourage the establishment and maintenance of reasonable charges for transportation services, without unjust discriminations, undue preferences or advantages, or unfair or destructive competitive practices; to cooperate with the several States and the duly authorized officials thereof; and to encourage fair wages and equitable working conditions; —all to the end of developing, coordinating, and preserving a national transportation system by water, highway, and rail, as well as other means, adequate to meet the needs of the commerce of the United States, of the Postal Service, and of the national defense. All of the provisions of this Act shall be administered and enforced with a view to carrying out the above declaration of policy."

4. Hearings on the Public Service application were had before Joint Board No. 119, which, on December 1, 1945, filed its report and order recommending the denial of the application.

5. Hearings on the Consolidated application were had before the Commission's Examiner, who, on December 1, 1945, filed his report recommending denial of the application.

6. Public Service and Consolidated filed exceptions to the respective recommendations. These were reviewed by Division 5 of the Commission, which, on January 5, 1947, filed its report reversing the findings of Joint Board 119 and the Examiner. An order was entered thereafter allowing the applications except as to operating over the uncompleted portions of the new highway S-3.

7. Plaintiffs petitioned the Commission for rehearing, which petition was denied December 4, 1947.

8. Promptly thereafter plaintiffs brought this action to enjoin, set aside, annul and suspend the orders of the Commission allowing the applications of Public Service and of Consolidated.

9. The matter was argued orally before this court convened pursuant to statute on February 25, 1948, and briefs have been submitted.

### Conclusions of Law

We conclude as matters of law:

1. The court has jurisdiction of the parties and of the subject matter of this suit.

2. The Commission's report and order of January 2, 1947, were within the statutory authority of the Commission.

3. The findings of the Commission contained in its report and order of January 2, 1947, are clearly sufficient to sustain its said order of that date.

4. The findings of the Commission contained in its report and certificate of January 2, 1947, are supported by substantial evidence sufficient to support its conclusions as expressed in its report of January 2, 1947.

5. The Administrative Procedure Act, Chapter 19, Section 1007(b), 5 U.S.C.A., was not in effect at the time the applications of the Public Service and of Consolidated to the Interstate Commerce Commission, above referred to, were made. Said Administrative Procedure Act has no bearing upon the Commission's action upon the petition for rehearing in this case.

6. The order of the Commission of December 4, 1947, denying plaintiffs' petition for rehearing was based upon consideration by the Commission of the records in the proceedings, of plaintiffs' petition and of the reply petitions and of plaintiffs' supplemental petition. It was in proper form.