**CENTRAL R. CO. OF NEW JERSEY v.
UNITED STATES.**

Civ. No. 97.

United States District Court
D. New Jersey.

Aug. 28, 1951.

Markley & Broadhurst, Jersey City, N. J., Edward A. Markley, Jersey City, N. J., for plaintiff, and Judson C. McLester, Jr., and Alexander H. Elder, New York City, of counsel.

McCarter, English & Studer, Newark, N. J., Augustus C. Studer, Jr., Newark, N. J., for Akron, Canton & Youngstown R. and other intervening Railroad defendants, Lawrence Chaffee, Kemper A. Dobbins, Theodore H. Burgess, Cleveland, Ohio, of counsel.

John F. Baecher, Sp. Asst. to Atty. Gen., for United States.

J. Stanley Payne, Associate Chief Counsel for the Interstate Commerce Commission, Washington, D. C., for Commission.

Before McLAUGHLIN, Circuit Judge, and SMITH and FAKE, District Judges.

McLAUGHLIN, Circuit Judge.

Plaintiff seeks to set aside an order of the Interstate Commerce Commission dated December 29, 1949 which in turn had set aside a prior order of the Commission dated October 11, 1948 and dismissed the complaint in the cause. Plaintiff also asks that the Commission's order of May 18, 1950 dismissing its petition for reconsideration be set aside. As the Code requires, the suit is brought against the United States. The Interstate Commerce Commission and 20 of the 245 railroad companies that were named as defendants below have intervened.

The litigation revolves around allowances for car-float and lighterage service in New York Harbor. In the proceedings before the Commission, the complaint named as defendants the 12 other New York Harbor roads, as well as all of the connecting railroad carriers operating in Official Territory[1] and participating in joint rates between New York Harbor and other points in and beyond said territory. The complaint alleged that the allowances which accrued to the plaintiff and other New York Harbor lines, for the performance of car-float and lighterage service within the free lighterage limits of New York Harbor out of joint class and commodity rates were inadequate, unjust, and unduly prejudicial to the plain-

---

1. Official Territory is the area bounded generally by the Potomac and Ohio Rivers on the south, the Mississippi on the west, the Canadian Border on the north and the Atlantic Ocean on the east.

tiff, and unduly preferential of defendant lines, in violation of Sections 1(4) and 3(4) of the Interstate Commerce Act, 49 U.S.C.A. §§ 1(4), 3(4). It was further alleged that the defendants' practice of maintaining said allowances at a non-compensatory level was an unjust and unreasonable practice in violation of Section 1(6) of the Act. Plaintiff prayed that the Commission prescribe the minimum division of the joint rates to be received by the plaintiff and the other New York Harbor roads as compensation for the lighterage and floatage service. After hearing, the Commission raised the allowance from 4.4¢ a 100 pounds for float shipments to 6¢ per 100 pounds and increased the 4.4¢ allowance per 100 pounds on lighterage shipments on a sliding scale to from 6 to 11¢ per 100 pounds depending upon the amount of the joint rate. These new allowances were to be further increased by the same percentages as the joint rates had been increased in certain other Commission proceedings.

Following the entry of its report[2] and order to the above effect, upon petition of certain of the defendants, the proceeding was reopened by the Commission for reargument and reconsideration. Thereafter[3] the Commission, in reversing its prior decision, found that " * * * the great bulk of the New York rates, the divisions of which are here in issue, do not include the full cost of the lighterage and floatage services in New York Harbor which are performed under such rates." Therefore, the Commission held that it was precluded " * * * from prescribing allowances for lighterage or floatage services as divisions of joint rates based primarily upon the cost of the harbor service alone, and without careful consideration of the cost of the line-haul and other services performed under such rates." The Commission affirmed its finding made in the previous report and for the reasons given therein, that the plaintiff's data purporting to show the costs of the non-harbor services performed under the joint rates was unacceptable. The Commission specifically found that there was no reliable cost data

in the record of the case " * * * for measuring the justness and reasonableness of the harbor allowances by the divisions of the joint rates received by the connecting carriers." The Commission then concluded upon the record, " * * * that the allowances assailed have not been shown to have been or to be unjust, unreasonable, inequitable, or unduly prejudicial as alleged, * * *." Regarding the charge that the acquiescence of the other New York Harbor lines and their connecting carriers in non-compensatory harbor allowances constituted an unlawful practice under Section 1(6) of the Interstate Commerce Act, the Commission held " * * * that the allegation of unlawfulness under section 1(6) of the act has not been sustained."

### Objections to the Findings of Fact.

Plaintiff first argues that the Commission's report and order " * * * is unsupported by any valid findings of fact, * * *." In attempted substantiation of this five propositions are presented. The first of these calls the Commission's finding that " * * * the great bulk of the New York rates, * * *, do not include the full cost of the lighterage and floatage services in New York Harbor which are performed under such rates.", a "fallacious assumption".

The above finding, rather than being fallacious, is amply supported by decisions of the Commission in other proceedings and by the evidence below. The undisputed reason for the level of the basic rates into New York from points west and south thereof was the competition between the rail lines and the boat lines operating on the Erie Canal, and those rates, first established by the New York Central which performed no lighterage service, were later met by the other rail lines. New York Harbor Case, 47 I.C.C. 643, 707–708. In that decision the Commission found that "There is no evidence whatever to show that the basic rates from Chicago to New York include any allowance for terminal services". Later the Commission, in Eastern Class Rate In-

---

2. 272 I.C.C. 529.

3. 276 I.C.C. 655.

vestigation, 164 I.C.C. 314, 447, approved the addition of ten miles on the New York end " * * * not as a measure of the cost of water-borne traffic in New York Harbor but merely a device for securing representative group distances." Neither plaintiff's attempted distinction of the Eastern Class Rate case nor its effort to eliminate the fundamental reason for the New York Harbor allowance situation as ancient and long ago discarded, are at all persuasive. It is noteworthy that the plaintiff neither before the Commission nor to this Court, has called attention to any decision standing for the doctrine that the New York joint rates take into consideration the full cost of unusual harbor terminal services. Nor has the plaintiff been able to explain away the fact that in the more recent general revenue proceedings since the New York Harbor case and the Eastern Class Rate case, as the Commission stated in its second report, 276 I.C.C. 655, 657, " * * * no special consideration was sought of, or given to unusual terminal services, at New York or elsewhere, and the general increases therein authorized did not, and were not intended to, make any change in the relative transportation burden to be borne by the rates to and from New York as compared with the rates to and from any other points." Moreover, there was in the record below strong testimony by defendants' witness Butler which fully justifies the Commission finding. And this Court cannot ignore the frank assertion made by the plaintiff in its motion before the Commission to dismiss the petition of certain defendants for reargument and reconsideration, where on pages 13 and 14 of the plaintiff's motion it was said: "Although it may be quite true that the rates to and from New York Harbor do not include specific extra allowances for the excess costs of harbor service, no one has complained that the rates themselves are not reasonable rates for the entire service rendered."

Plaintiff's second point under this general head is that the Commission misinter-

preted the cost studies of the principal defendant harbor lines which were in evidence on behalf of the plaintiff. Those studies consisted of certified abstracts of testimony and exhibits introduced by the harbor lines in prior proceedings before the Commission.[4] As the Commission found, the studies were for different periods than plaintiff's harbor costs; they were not prepared in the same manner or upon the same basis as the plaintiff's costs and they did not, in the words of the second report, " * * * show the excess cost of the harbor service over the ordinary origination and termination cost, * * *" as outlined in the plaintiff's own cost study. The Commission held, as it had in its first report, that " * * * the studies thus offered, even as evidence of total harbor costs, are incomplete." There is no substantial challenge of the Commission's above fact findings. From those findings it is obvious that the studies were not fairly comparable with the Central's own survey of its costs.

Complaint is then made of a statement in the Commission's report which reads: "If increased harbor allowances are to be based in part on the excess cost of the harbor service over the ordinary origination and termination cost, and if as complainant contends such allowances must be the same for all of the harbor lines, it follows that the excess costs to be used are not those of any one carrier, but the average for all of the harbor services for which the allowances are made." Plaintiff states that the Commission " * * * evidently assumed that there was no such evidence of 'average cost' in the record." and goes on to conclude that the Commission made an "Erroneous finding that evidence of 'average cost' is lacking."

■ What the Commission really found was that proper proof was lacking of the actual excess costs of the harbor services to the other harbor lines; the kind of proof that had been put into evidence by the plaintiff of the excess costs of its own har-

---

4. Lighterage and Storage Regulations at New York, 35 I.C.C. 47; Lighterage Cases, 203 I.C.C. 481; State of New Jersey v. Baltimore & Ohio R. R. Co., 245 I.C.C. 581; Agwilines, Inc., v. Akron, C. & Y. Ry. Co., 248 I.C.C. 255.

bor services. Proofs that plaintiff did introduce with respect to the allegedly true excess costs of the New York Harbor service to the other harbor lines, as has been stated, concerned different periods than the harbor costs of the Jersey Central which were in evidence. They were not prepared in the same manner or upon the same basis as the Jersey Central costs and, in the language of the second report, "They do not purport to show the excess cost of the harbor service over the ordinary origination and termination cost, as is the case in the Jersey Central study." Nowhere in the testimony of the witness Wilson, which is stressed by the plaintiff, is there evidence of ordinary origination and termination costs of any of the harbor carriers. That evidence is, therefore, subject to the same objection as the data offered by the plaintiff regarding the harbor costs of the other harbor lines.

Plaintiff's fourth objection is that the Commission made the "Erroneous finding that there is 'no evidence' of the divisions on service performed as between the other harbor carriers and their connections." Effort is made to support that statement by reference to exhibits produced by defendants' witness Butler and his testimony in connection therewith.

The actual language of the Commission was that: "There is no evidence, however, as to the divisional arrangements between the other harbor lines and their connections under the joint rates applying in connection with those lines on the principal or typical commodities, nor as to the extent of the service performed by the other harbor lines as compared with the service performed by their connections under such rates. There is no indication that the divisional arrangements between the Jersey Central and its connections are representative of the divisional arrangements between the other harbor lines and their connections, nor that the commodity rates shown as applying in connection with the Jersey Central are in all respects typical of those applying in connection with the other harbor lines. The record is deficient in this respect."

We have examined each of the Butler exhibits and they in nowise contradict that finding. To point up the deficiency mentioned by the Commission we need only look to the kind of evidence presented by the plaintiff regarding its own harbor service. That type of proof was not submitted with respect to the other New York Harbor lines and that lack is the precise deficiency above mentioned by the Commission. Plaintiff's chief traffic witness, Ewing, introduced several exhibits listing the principal commodities handled in lighterage service by the plaintiff during the ten year period, 1934–1943, and the principal commodities in car-float service in the five year period from 1939–1944. He also showed in these exhibits the divisional arrangements, including the harbor allowances, between the plaintiff and its connecting lines of the joint rates on such principal commodities. The evidence as to the divisions on lighterage traffic revealed practically all of the commodities handled in that service by plaintiff during the ten year period. The presentation as to the car-float traffic consisted of the divisions of more than 2,000 rates on some 450 commodities. But there was no evidence in the record before the Commission as to the principal or typical commodities handled in harbor service by the other harbor lines, the rates thereon, or the divisional arrangements of such rates between the other harbor lines and their connecting lines. Some of Butler's exhibits relied on by plaintiff as supplying this deficiency merely related to certain class rates between New York and representative points and the present divisions of such rates, together with the divisions as they would be under the formula proposed by plaintiff. The remaining Butler exhibits simply indicated the number of cars handled in harbor service during the month of October, 1945, by the several New York Harbor lines, the territory in which they originated or terminated, the revenue of the New York Harbor lines during that month, and the revenue of their connections, and the revenue as it would be under the formula proposed by plaintiff. The Butler exhibits had nothing to do with the divisional

arrangements under the joint rates between the other harbor lines and their connections in the movement of their principal or typical commodities. That being so, the Commission could not have concluded that the principal or typical commodities handled by the other harbor lines in harbor service were transported under class rates. The record before the Commission warrants its finding as to the deficiency of the above evidence.

The last objection of the plaintiff with respect to alleged factual errors in the report deals with a minor item in connection with the Commission's conclusion that "It does not follow, because the total operating and other costs mentioned have risen, which have been met by general increases in rates, that an increase must also be made in the harbor allowances in *exactly* the same ratio." (Emphasis supplied).

We think that conclusion sound and, in the absence of competent proof that the harbor allowance sought should be in exactly the same proportion as the joint rate increases since 1915 (which have not only been authorized but put into effect) the fact that in prior rate decisions the Commission did allow the same proportionate increase in the harbor allowance as it granted in the joint rates, can hardly be said to be binding upon the Commission in this case in the face of its present above quoted language.

In addition, the Commission's above comment was soundly based on the record before it. Plaintiff failed to prove that the present New York rates contain all of the percentage increases authorized by the Commission since 1915. Defendant railroads vigorously deny that such is the fact and they point to the testimony of plaintiff's principal traffic witness, Ewing, who, in discussing his own exhibits, admitted that there have been substantial reductions in the past 15 or 20 years and for many years prior to that in a great number of rates which move traffic to and from New York. It appears that rate reductions made after general revenue cases are not unusual and that, according to Ewing, the depressed rates mentioned by him were effected to meet truck and canal competition and for other reasons, such as consideration of what the traffic would bear, the nature of the traffic, problems of loading, etc.

### Alleged Errors of Law.

Under this caption it is first argued that, since the primary issue in this litigation is harbor costs and not the over-all joint rates, the latter must be presumed to be reasonable under Baltimore & Ohio R. R. Co. v. United States, 298 U.S. 349, 56 S.Ct. 797, 80 L.Ed. 1209, and that the Commission erred in its construction of Section 15(6) of the Act [5] by ignoring such presumption.

5. Section 15(6) of the Interstate Commerce Act, 49 U.S.C.A. § 15(6) reads: "Commission to establish just divisions of joint rates, fares, or charges; adjustments. Whenever, after full hearing upon complaint or upon its own initiative, the commission is of opinion that the divisions of joint rates, fares, or charges, applicable to the transportation of passengers or property, are or will be unjust, unreasonable, inequitable, or unduly preferential or prejudicial as between the carriers parties thereto (whether agreed upon by such carriers, or any of them, or otherwise established), the commission shall by order prescribe the just, reasonable, and equitable divisions thereof to be received by the several carriers, and in cases where the joint rate, fare, or charge was established pursuant to a finding or order of the commission and the divisions thereof are found by it to have been unjust, unreasonable, or inequitable, or unduly preferential or prejudicial, the commission may also by order determine what (for the period subsequent to the filing of the complaint or petition or the making of the order of investigation) would have been the just, reasonable, and equitable divisions thereof to be received by the several carriers, and require adjustment to be made in accordance therewith. In so prescribing and determining the divisions of joint rates, fares and charges, the commission shall give due consideration, among other things, to the efficiency with which the carriers concerned are operated, the amount of revenue required to pay their respective operating expenses, taxes, and a fair return on their railway property held for and used in the service of transportation, and the importance to the public of the trans-

The Jersey Central by means of this litigation is endeavoring to obtain an increase in its harbor allowance out of the joint New York rates. The Commission at no time has objected to the Central making harbor costs the primary issue. In a strictly divisions case, as said in Baltimore & Ohio R. R. Co. v. United States, supra, 298 U.S. at page 357, 56 S.Ct. at page 802, " * * * the Commission is governed by sections 1(4), 15(6), 15a(2), 49 U.S.C.A. §§ 1(4), 15(6), 15a(2); it is not required or authorized to investigate or determine whether the joint rates are reasonable or confiscatory. * * * The purpose of the provisions just cited is to empower and require the commission to make divisions that colloquially may be said to be fair." We need not concern ourselves with the question of whether the unusual factual situation present in this matter would permit it to be classified as within the group governed by the B. & O. decision because here the Commission did not hold that the New York rates were not reasonable. Such a ruling was not important to its decision and was not contended for by any of the defendants. The Commission did say that since " * * * the joint rates, or at least most of them, do not include the full cost of the harbor services, * * * for the purposes of this proceeding, [they] must be assumed to be below a *maximum* reasonable level." (Emphasis supplied). This is a far cry from plaintiff's statement that the Commission " * * * necessarily determined that the New York rates which it had prescribed, were not compensatory, * * *." All the Commission did was to find that since one division of presumably reasonable joint rates was below cost, the joint rates themselves for the purposes of this action would be assumed to be below a *"maximum* reasonable level". (Emphasis supplied). The Jersey Central, itself, in its already referred to motion to dismiss defendants' petition for reargument and re-

consideration after the filing of the first report, would seem to be in agreement with this thought of the Commission. Speaking of those specific New York joint rates, it there said, *"There is, of course, a wide range between minimum reasonable rates and maximum reasonable rates* and no one has attempted to say where in that range these rates come."* (Emphasis supplied).

The second alleged error of law by the Commission is said to be that the Commission concluded " * * * that it could not pass on the 'fairness' of the terminal allowance complained of without, at the same time, determining the adequacy of all the other subdivisions of the countless rates involved." This is a gross overstatement of the holding of the Commission. The Commission did not conclude, as the plaintiff would have us believe, that in prescribing harbor allowances, it had to require " * * * specific evidence, and separate adjudication, in respect to each division of each rate of each carrier, * * *." The Supreme Court, in the New England Divisions Case (Akron, C. & Y. R. Co. v. United States), 261 U.S. 184, 196, 43 S.Ct. 270, 275, 67 L.Ed. 605, had termed such a construction of the divisions statute, Section 15(6), unworkable and not required either by the Interstate Commerce Act or by the Constitution. The Court there laid down the "typical evidence rule" which in brief permitted the Commission to order a general increase of divisions to carriers " * * * based upon evidence which the Commission assumed was *typical in character, and ample in quantity,* to justify the finding made in respect to each division of each rate of every carrier." (Emphasis supplied.) Here, what the Commission in fact concluded was that "The just, reasonable, and equitable division or allowance for harbor service to which the complainant or any of the other harbor lines is entitled, as part of the total service performed by all of the carriers under the joint rate, can be determined only by con-

portation services of such carriers; and also whether any particular participating carrier is an originating, intermediate, or delivering line, and any other fact or circumstance which would ordi-

narily, without regard to the mileage, haul, entitle one carrier to a greater or less proportion than another carrier of the joint rate, fare or charge."

sidering the respective divisions of the rate and the services rendered thereunder, *with the object of reasonably relating the harbor allowance to the portions of the rate distributed among the respective line-haul carriers.*" (Emphasis supplied) and that for it to revise the harbor service allowances it would need sufficiently comprehensive evidence produced before it " * * * to enable us to determine that the resulting divisions, not only of the Jersey Central, but of the other harbor lines, as well as of the line-haul carriers, will be just, reasonable and equitable." This is entirely consistent with the plaintiff's theory of its case, for plaintiff's counsel stated on the first oral argument before the Commission that "The entire case was presented on the theory that there should be a division of the revenue in proportion to the respective costs of the harbor lines on the one hand, and of the line-haul carriers on the other hand." The Commission found that the needed proof was lacking. As detailed by the Commission in its second report, plaintiff's major failure of proof consisted in (1) unacceptable data purporting to show the costs of the nonharbor services performed under the joint rates;[6] (2) incomplete harbor cost studies on the other New York Harbor lines;[7] (3) no evidence as to divisional arrangements between the other harbor lines and their connections on the principal or typical commodities, the rates

thereon, and the extent of service performed by the other harbor lines as compared with the service performed by their connections under such rates;[8] (4) little evidence relating directly to the efficiency of the harbor services.[9] It cannot be denied that there is a definite and vital relationship between the cost and amount of the harbor service and the cost and amount of the other services covered by the joint rates. As the Commission stated, "Before we can find unlawful any divisional arrangements, we must have before us evidence bearing upon the elements laid down for our consideration in section 15(6). United States v. Abilene & S. R. Co., 265 U.S. 274 [44 S.Ct. 565; 68 L.Ed. 1016]; Brimstone R. R. & Canal Co. v. United States, 276 U.S. 104 [48 S.Ct. 282, 72 L.Ed. 487]."

■ Plaintiff argues at some length that the public interest and the national transportation policy require the increase it seeks. Neither the public interest nor the national transportation policy can be seriously urged as authorizing or permitting harbor allowance increases as divisions of joint rates for which there is either no proof at all or which are predicated on incomplete or improper proof. With substantial support from the whole record the Commission found that the Central's evidence added up to just that kind of a case

---

6. 276 I.C.C. 655, 658. "Complainant's data purporting to show the costs of the non-harbor services performed under the joint rates were found in the prior report to be unacceptable. We affirm that finding, for the reasons given in that report, at pages 563–568. There are, therefore, upon this record no reliable cost data for measuring the justness and reasonableness of the harbor allowances by the divisions of the joint rates received by the connecting carriers."

7. Id. at 659. "As found in the prior report, at page 579, the studies thus offered, even as evidence of total habor costs, are incomplete."

8. Id. at 660. "There is no evidence, however, as to the divisional arrangements between the other harbor lines and their connections under the joint rates applying in connection with those lines on the principal or typical commodities, nor as

to the extent of the service performed by the other harbor lines as compared with the service performed by their connections under such rates. There is no indication that the divisional arrangements between the Jersey Central and its connections are representative of the divisional arrangements between the other harbor lines and their connections, nor that the commodity rates shown as applying in connection with the Jersey Central are in all respects typical of those applying in connection with the other harbor lines. The record is deficient in this respect."

9. Id. at 661. "Under section 15(6) of the act we are required to give consideration, among other things, to the efficiency with which the carriers concerned are operated. * * * There is little evidence relating directly to the efficiency of the harbor services."

and therefore, acting entirely within its statutory warrant, dismissed the complaint. This theory, unsupported by proper proof, that the public interest and national transportation policy demand that plaintiff's contentions be sustained, cannot be accepted as a legitimate substitute for the evidence specifically called for by Section 15(6) of the Act.

Plaintiff next asserts that "The Commission erred in failing to find that the maintenance of the present harbor allowance is an unlawful practice in violation of Section 1(6) of the Act."[10]

In arguing the point strenuous attempt is made to create the impression that the Commission did not pass upon this question. The failure of the first report to discuss or decide it is stressed.[11] And then, in commenting on the denial of relief to the plaintiff by the Commission in its second report, plaintiff's reply brief states: "It may not lawfully do that, without due investigation and a valid finding on this issue." Completely overlooked is the Commission's specific finding in its second report that *"Upon the record, we conclude that the allowances assailed have not been shown to have been or to be unjust, unreasonable, inequitable, or unduly prejudicial as alleged, and that the allegation of unlawfulness under Section 1(6) of the act has not been sustained."* (Emphasis supplied).

Plaintiff's avowed purpose in invoking Section 1(6) of the Act was to seek prescription of minimum harbor allowances for its competitors in New York Harbor, in order that the plaintiff could avail itself of such allowance as the Commission might prescribe for it under Section 15(6). The Commission explained plaintiff's position in these words, "The complaint was filed against all of the carriers participating in the joint rates, including harbor lines other than the Jersey Central, and sought prescription of the same allowances for all harbor lines, in order to prevent undue prejudice that otherwise would allegedly result from diversion of traffic, by rail connections, from the Jersey Central to other harbor lines with lower harbor allowances." Thus the plaintiff, though nominally interested in proving the existence of an unlawful practice, in reality sought a change in the existing divisional arrangements among the twelve other New York Harbor carriers and their connections under the joint rates. Had the plaintiff succeeded, the Commission would have prescribed increased harbor allowances for the other harbor carriers as "just, reasonable, and equitable divisions" of joint rates without having had before it, as to the other harbor roads, evidence bearing upon the elements required for its consideration under Section 15(6) of the Act. A similar circumvention of the divisions statute was stricken down in Baltimore & Ohio R. R. Co. v. United States, 277 U.S. 291, 300, 48 S.Ct. 520, 522, 72 L.Ed. 885, where the Court said that divisional arrangements under joint rates are not a practice and added: "But even if the matter in controversy were a 'practice' within the meaning of the act, the Commission would not be authorized to set it aside without evidence that it is unjust or unreasonable.[12] Para-

---

10. Section 1(6) of the Interstate Commerce Act, 49 U.S.C.A. § 1(6), reads: "It is made the duty of all common carriers subject to the provisions of this chapter to establish, observe, and enforce * * * just and reasonable regulations and practices affecting * * * all other matters relating to or connected with the receiving, handling, transporting, storing, and delivery of property subject to the provisions of this chapter * * * and *every unjust and unreasonable* classification, regulation, and *practice is prohibited and declared to be unlawful.*" (Emphasis supplied.)

11. The sole reason for the Commission not passing upon the "unlawful practice" issue in its first report was, as stated in that first report, 272 I.C.C. 529, 580. "In view of the conclusions herein reached, it is unnecessary to discuss complainant's allegation that the performance by defendant New York Harbor lines of car-floatage and lighterage service at less than cost is an unreasonable practice, in violation of section 1(6) of the act."

12. This language of the Supreme Court derives directly from Section 1(6) of the Act which prohibits and makes unlawful "* * * every unjust and unreasonable * * * practice * * *."

graph (6) of section 15, 49 U.S.C.A. § 15(6), Comp.St. § 8583(6), empowers the Commission to prescribe divisions of joint rates, but there must be evidence adequate to justify action. Brimstone Railroad & Canal Co. v. United States, 276 U.S. 104, 48 S.Ct. 282, 72 L.Ed. 487; United States v. Abilene & Southern Ry. Co., 265 U.S. 274, 44 S.Ct. 565, 68 L.Ed. 1016; New England Divisions Case, 261 U.S. 184, 43 S.Ct. 270, 67 L.Ed. 605. That rule may not be avoided by a broad construction of the word "practice.' "

■ The proofs offered by the Central, or rather, the lack of them, produced a fact result that justified the Commission's holding that the charge of unlawful practice had not been sustained. Cf. Radio Corp. of America v. United States, 341 U.S. 412, 71 S.Ct. 806.

### Actions of the Commission Alleged to be Arbitrary and in Disregard of Due Process.

■ Plaintiff urges that the "order of dismissal rests squarely on the premise that: 'the joint rates or at least most of them do not include the full cost of the harbor service and therefore for the purpose of this proceeding must be assumed to be below a maximum reasonable level.' "

It is palpably incorrect to say that the above is why the Commission dismissed the complaint. Plaintiff's deliberate failure to produce adequate proof from which the Commission would have been able to determine its equitable share of the joint rate for its harbor service was the fundamental reason why the complaint was dismissed.

Whether because of conflict with its basic theory or for some other reason, plaintiff made it entirely clear that it had no wish to supplement the present record with any additional evidence.[13]

It is also claimed that the action of the Commission was arbitrary because its order was based in part on findings of fact which are either wholly irrelevant or unsupported by evidence.

Under this point plaintiff once more attacks the Commission's conclusion that the New York rates do not include the full cost of the harbor service as derived from the Commission's observations regarding the New York Harbor Case and the Eastern Class Rate Investigation. It is again asserted that those observations are wholly irrelevant because they are based on an outmoded rate structure. The vital current importance of the New York Harbor Case and of the Eastern Class Rate Investigation to the issue before us was gone into early in this opinion. It is enough to say that once more plaintiff fails to cite any decision differing from the rationale of those cases.

Plaintiff's point under subdivision c of this branch of the argument repeats its erroneous statement that the Commission dismissed the complaint because the New York rates do not include the cost of harbor service. With that as a foundation it goes on to say that the dismissal was arbitrary because the Commission at the time had in effect orders prescribing many of the New York rates as maximum reasonable. The argument is wholly without merit.

■ Subdivision d concerns the denial of reargument. There was nothing arbi-

13. Transcript of argument before this Court, page 99:

"Judge Fake: Mr. Elder [of counsel with plaintiff], a point has been made here that the Commission did not have before it sufficient evidence to reach the conclusion that you have been seeking, that they had extracts or excerpts from this, that or the other in the record, but nowhere sufficient evidence which would permit them to establish by ruling what you want. Now, what have you to say on that point, and do you want to go back, open it up and take further testimony or are you willing to rest on the record that you now have?"

Id. page 100:

"Mr. Elder: * * * Judge, this is the situation: If we had a rehearing before the Commission tomorrow—and it isn't possible, either, but if we had a further hearing before the Commission tomorrow, in my opinion there is no further relevant evidence that is available as to this petition.

"Judge Fake: That isn't the question. You are satisfied to go on with the record we now have?

"Mr. Elder: Exactly."

trary or in disregard of due process in that action of the Commission. Cf. I. C. C. v. Jersey City, 322 U.S. 503, 515, 64 S.Ct. 1129, 88 L.Ed. 1420; Inter-City Transportation Co., Inc., v. United States, D. C., 89 F.Supp. 441, 443.

### Fifth Amendment.

Finally, says the plaintiff, the Commission in dismissing the complaint acted contrary to the Fifth Amendment and so left the plaintiff without remedy for confiscatory divisions of joint rates prescribed by the Commission itself.

The premise to this assertion, i. e., that the divisions to the Jersey Central from the joint rate are confiscatory, is not borne out by the record. Those divisions do not just consist of the Central's harbor allowances but include a percentage division of the joint rate as a line-haul carrier and for origination and termination of freight. Every one of the harbor railroad group receives the same type of allotments from the joint rate. There is nothing in this record to indicate the total divisions received by the Jersey Central and the other harbor lines in compensation for their various services out of the joint New York rate, are confiscatory. There is, at the very least, no satisfactory proof of excess cost of harbor service of any of the lines with the exception of the Jersey Central. Plaintiff claims, correctly we think, that as a matter of competition it could not afford to accept higher compensation for its harbor service than the allowances received by the other harbor lines since in that event it would surely lose its business to those other carriers. But as already mentioned, this case is barren of inference that the divisions of the joint rate to those other lines are unfairly low.

In addition to the above, plaintiff's proof of its own harbor costs is strongly attacked by the defense on the ground that it is predicated on a stale survey made back in 1939; that the harbor services, including plaintiff's, have been inefficiently operated and that a late check would be bound to show improvement especially in connection with the lowering of the cost of those services.

On the whole record it is apparent that the action of the Commission in dismissing the complaint does not amount to confiscation as charged.

### Conclusion.

The report of the Commission is sound in law. Its factual findings have substantial support on the record considered as a whole. Cf. Universal Camera Corporation v. National Labor Relations Board, 340 U.S. 474, 71 S.Ct. 456; National Labor Relations Board v. Pittsburgh Steamship Co., 340 U.S. 498, 71 S.Ct. 453. Its position is neither arbitrary nor in disregard of due process. Its orders reversing its prior order in this matter and denying reargument will be affirmed.

Findings of fact and conclusions of law are filed herein in accordance with the provisions of Rule 52, Federal Rules of Civil Procedure, 28 U.S.C.

### Findings of Fact.

We find as facts:

1. On July 3, 1944 the Trustees of the Central Railroad Company of New Jersey filed a complaint with the Interstate Commerce Commission against all of the connecting railroad carriers operating in Official Territory and participating with the plaintiff in joint rates between New York Harbor and other points in and beyond said territory.

2. Said complaint alleged that the New York Harbor allowances were inadequate, unjust, unreasonable and inequitable, and unduly prejudicial to the Central Railroad of New Jersey in violation of Section 1 (4) and Section 3(4) of the Interstate Commerce Act.

3. The complaint further charged that the practice of the other New York Harbor lines in agreeing to the maintenance of non-compensatory harbor allowances was an unjust and unreasonable practice in violation of Section 1(6) of the Act.

4. The evidence in the matter was heard by two examiners on behalf of the Com-

mission and was concluded in September 1946. The case was submitted to the Commission April 21, 1948 and the Report of the Commission was filed October 11, 1948.

5. In that Report the Commission found that the New York Harbor allowances to the Jersey Central out of the joint rates " * * * for the future will be unjust, unreasonable, and inequitable." The allowances for car floatage were increased to six cents per hundred pounds and for lighterage were increased on a sliding scale from six to eleven cents per hundred pounds. These allowances were to be increased proportionately with certain subsequent rate increases.

6. The increases were made applicable to all New York Harbor lines.

7. The Jersey Central allowances for car floatage and lighterage were not to be adjusted retroactively.

8. An appropriate order was entered by the Commission on the same date that its Report was filed, namely, October 11, 1948.

9. On December 10, 1948 a petition for reargument and reconsideration was filed by certain non-harbor lines and the New York Central Railroad Company. Plaintiff filed a motion to dismiss that petition.

10. The reargument was allowed and the case reargued on April 25, 1949.

11. Following reargument and reconsideration, the Commission, on December 29, 1949, filed a second report in the case. That report reversed the conclusions of the prior report and held that "Upon the record, we conclude that the allowances assailed have not been shown to have been or to be unjust, unreasonable, inequitable, or unduly prejudicial as alleged, and that the allegation of unlawfulness under section 1(6) of the act has not been sustained." On the same date, namely, December 29, 1949, the Commission entered an order setting aside its order of October 11, 1948 and dismissing the complaint in this cause.

12. Plaintiff then filed a petition requesting that the order of dismissal be set aside and that the case be again reopened for further consideration.

13. Said petition was denied by the Commission's order of May 18, 1950.

14. Plaintiff on January 29, 1951 filed its petition in this Court seeking to have set aside (1) the Commission's order of December 29, 1949 which, as stated, had reversed the Commission's first order in this case and (2) the Commission's order of May 18, 1950 which had denied plaintiff's petition that the case be reopened and reconsidered.

15. The United States of America and the Interstate Commerce Commission filed answers on April 4, 1951. The intervening railroad defendants filed an answer on April 5, 1951.

16. The matter was argued orally to this Court, convened pursuant to statute, on June 8, 1951 and briefs have been submitted.

### Conclusions of Law.

1. The Court has jurisdiction of the parties and of the subject matter of this suit.

2. The Commission's orders of December 29, 1949 and May 18, 1950 were within the statutory authority of the Commission.

3. The findings of the Commission contained in its Report of December 29, 1949 are supported by substantial evidence on the record considered as a whole and are clearly sufficient to sustain its order of that date.

4. The order of the Commission of May 18, 1950 denying plaintiff's petition for reopening the case and reconsideration thereof was entirely proper and in accordance with the authority vested in the Commission by the Interstate Commerce Act.

5. The orders of the Commission of December 29, 1949 and May 18, 1950 should be affirmed.