**KOPPERS COMPANY, Inc., Plaintiff,**

v.

**UNITED STATES of America, Defendant,**

and

**The Interstate Commerce Commission et al., Intervening Defendants.**

**Civ. No. 12974.**

United States District Court
W. D. Pennsylvania.

June 7, 1955.

Moorhead & Knox, Pittsburgh, Pa., for National Water Carriers Ass'n, intervenors.

John M. Crimmins, John B. Keeler, Richard E. Spatz, Pittsburgh, Pa., for Koppers Co., Inc.

John W. McIlvaine, U. S. Atty., Pittsburgh, Pa., Herbert Brownell, Atty. Gen., John Wigger, Sp. Asst. to the Atty. Gen., for the United States.

Elder Marshal, John J. Heard, of Reed, Smith, Shaw & McClay, Pittsburgh, Pa., for Chesapeake & O. Ry. Co., Virginian Ry. Co. and Norfolk & Western Ry. Co.

Edward K. Reidy, Gen. Counsel, Isaac K. Hay, Asst. Gen. Counsel, Washington, D. C., for Interstate Commerce Commission.

Raymond Goehring, Pittsburgh, Pa., Leonard S. Leaman, Frank J. Clark, New York City, for James McWilliams Blue Line, Inc., intervenor.

Harold R. Schmidt, of Rose, Rose & Houston, Pittsburgh, Pa., for Property Owners' Committee.

Before STALEY, Circuit Judge, and GOURLEY and WILLSON, District Judges.

GOURLEY, Chief Judge.

This is a suit to enjoin, set aside and annul an order entered by the Interstate Commerce Commission on October 4, 1954, 28 U.S.C. §§ 1331, 1336, 2284, 2321–2325.

It came on to be heard before a specially constituted statutory court pursuant to the provisions of Title 28 U.S.C. §§ 2284 and 2321–2325.

In addition to the United States as statutory defendant, the Interstate Commerce Commission and certain common carriers have intervened as defendants.

The answers of the Interstate Commerce Commission, The Chesapeake and Ohio Railway, The Virginian Railway Company and The Norfolk and Western Railway Company all plead a "First Defense," asserting in substance plaintiff's failure to state a claim upon which relief can be granted.[1]

The complaint in this case followed the denial by the Commission of plaintiff's petition for reconsideration of its order of April 11, 1952. The first defense was lodged, which defense, if sufficient, will dispose of the proceeding and eliminate the necessity of considering the arguments upon the merits. If the defense is insufficient, it should be stricken to leave the way clear for a determination of the plaintiff's claim upon the merits.

The following is the chronology of events:

On January 16, 1951, the Class I common carrier railroads petitioned the Interstate Commerce Commission for approval of a general increase in freight rates. The petition was docketed Ex Parte No. 175, Increased Freight Rates, 1951, and resulted, inter alia, in an order entered on April 11, 1952, permitting rate rail increases as to coal with a limitation maximum of 40¢ per net ton; provided, however, that the increased rail freight rates on coal from the Southern Mines to Hampton Roads could be no higher than 20¢ per net ton when the coal was destined for subsequent movement by water in coastwise service to New England ports. The effect of said permissive order was to bestow upon receivers of coal located at New England ports a 20¢ lower rail rate for the transportation of coal from the mines to Hampton Roads ports than competing receivers located at less distant ports, including New York, New Jersey, and Philadelphia. On May 8, 1952, the plaintiff, which operates its coke plant at Seaboard, New Jersey, filed a petition for intervention in Ex Parte No. 175, and for reconsideration and modification of the April 11, 1952, order.

On May 28, 1952, Consolidated Edison Company of New York, Inc., filed with the Commission a complaint against the Virginian Railway Company and The Chesapeake and Ohio Railway Company, which was assigned Docket No. 31045, it being claimed the permissive coal rate increases were unfair and discriminatory. The Koppers Company did not intervene or become a party to the pro-

1. The first defense, as set forth in the answer of the Commission, is as follows:

"The Commission alleges that the plaintiff herein does not have any legal right or standing to institute this action, and that the complaint does not present a justiciable controversy or state a cause of action upon which relief may be granted. The Commission further alleges that the plaintiff was an intervening party only to the proceeding before the Commission in Ex Parte No. 175, Increased Freight Rates, 1951, and did not intervene in or become a party to the proceeding before the Commission, in Docket No. 31045, Consolidated Edison Company of New York, Inc. v. Virginian Railway Company, et al., referred to in the first paragraph of said complaint. The Commission further alleges that in the proceeding in Ex Parte No. 175, the Commission simply authorized but did not require the railroads to increase their rates within certain maximum limits, and therefore the plaintiff, as shipper, has no legal right or standing to bring this action to set aside the permissive action of the Commission in Ex Parte No. 175. The Commission further alleges that the plaintiff has not exhausted its administrative remedies for the reason that on May 12, 1953 it filed and presently has pending before the Commission a complaint, copy of which is attached hereto as Exhibit A, which has been assigned Docket No. 31264, entitled 'Koppers Company, Inc. v. The Chesapeake and Ohio Railway Company, et al.,' in which the plaintiff attacks and seeks to have declared invalid the rates which are the subject of this action."

ceeding on the complaint in Docket No. 31045, Consolidated Edison Company of New York, Inc. v. The Virginian Railway Company, et al.

Plaintiff's petitions for reconsideration and intervention were related only to Ex Parte No. 175, Increased Freight Rates, 1951, and participated as an intervenor restricted to the ex parte proceeding alone.[2]

On May 12, 1953, plaintiff filed a complaint before the Interstate Commerce Commission against the southern railroads, which proceeding has been assigned docket No. 31264, seeking to have the rates involved in the instant action declared invalid and also seeking reparations for the alleged illegal charges by The Chesapeake and Ohio Railway Company and others for coal shipped from the southern mines to Hampton Roads for movement by water in coastwise service to plaintiff's Seaboard plant. Said complaint is presently pending before the Commission.

Plaintiff's suit before this court seeks to have the court direct the Commission to grant the relief sought in plaintiff's petition for reconsideration initially filed before the Commission, which is to require the southern carriers to maintain the same rate on transportation of coal from the southern mines to Hampton Roads ports for subsequent transshipment by water, whether the ultimate destination is the plaintiff's plant at Seaboard, New Jersey, or its competitors located at New England ports.

It is contended that the Commission's report and order "Ex parte No. 175, Increased Freight Rates, 1951" resulting from the findings of the Commission in that proceeding, whereby permissive increases in tariff form had become effective bestowing upon receivers of coal located at New England ports a twenty-cent lower rail rate for the transportation of coal from the mines to Hampton Roads ports than competing receivers located at less distant points, was unreasonable, discriminatory and unduly prejudicial.

The crucial issue, therefore, is whether this court may set aside and annul a permissive order entered by the Commission when plaintiff has failed to exhaust his remedy under Sections 13 and 15 of the Interstate Commerce Act, but has interceded as an intervenor for reconsideration and modification of the Commission's findings.

---

2.                     "Order
"At a General Session of the Interstate Commerce Commission, held at its office in Washington, D. C., on the 7th day of July, A.D., 1952.
          "Ex Parte No. 175
"Increased Freight Rates, 1951.
          "No. 31045
"Consolidated Edison Company of
          New York
                 v.
The Virginian Railway Company et al.
"Upon consideration of the record in Ex Parte No. 175, and the petition of The Baltimore and Ohio Railroad Company and other railroads, dated May 5, 1952, relating to increases authorized for application to rates on coal and coke moving by rail to North Atlantic ports and beyond by water in coastwise service to New England ports and requesting clarification or modification of paragraph 3 of Finding No. 5 which appears on sheet 100 of the mimeographed report therein, decided April 11, 1952, reading as follows:

" 'The increase in rates to the North Atlantic ports, Hampton Roads—New York, inclusive, when for movement beyond by water in coastwise service to New England ports, shall not exceed 20 cents per net ton, nor shall the increase in the rates from New Engand ports to the interior on coal reaching such ports by water, exceed 20 cents per net ton.'
And upon consideration of the petitions of Koppers Company, Consolidated Edison Company, and Public Service Electric and Gas Company for leave to intervene and for reconsideration and modification of said finding No. 5; and for good cause appearing:
"It is ordered, That the said petitions be assigned for hearing with docket No. 31045, Consolidated Edison Company of New York v. The Virginian Railway Company, et al., at a time and place to be hereafter designated.
"By the Commission.
                         "W. P. Bartel,
"Seal                          Secretary."

In the case of a permissive order, the carrier is the only necessary party to the proceeding. The Commission represents the public. While it is proper and customary for shippers interested to participate in hearings, there exists no provision for notice to them. They are not bound by the order entered and the tariffs filed. If the rates made by tariffs filed under the authority granted seem to them unreasonable, or unjustly discriminatory, Sections 13 and 15 afford ample remedy. To permit shippers to seek redress for such grievances in the courts would invade and often nullify the administrative authority vested in the Commission. The attempt of the court to remove some alleged unjust discrimination might result in creating more. United States v. Merchants' & Manufacturers' Traffic Association, 1916, 242 U.S. 178, 37 S.Ct. 24, 61 L.Ed. 233.

Sections 13 and 15 of the Act speak with clarity, and explicitly specify the procedure which complainants must pursue before the Commission in order to seek redress of grievances.[3]

The plaintiff has mistaken its remedy in the statutory scheme of railroad rate making. Its contention is that the Commission, without sufficient evidence or proper findings of fact, has determined or fixed particular rates for the plain-

---

3. "§ 13. Complaints to and investigations by commission.—(1) Complaint to commission of violation of law by carrier; reparations; investigation. Any person, firm, corporation, company, or association, or any mercantile agricultural, or manufacturing society or other organization, or any body politic or municipal organization, or any common carrier complaining of anything done or omitted to be done by any common carrier subject to the provisions of this chapter in contravention of the provisions thereof, may apply to said commission by petition, which shall briefly state the facts; whereupon a statement of the complaint thus made shall be forwarded by the commission to such common carrier, who shall be called upon to satisfy the complaint, or to answer the same in writing, within a reasonable time, to be specified by the commission. If such common carrier within the time specified shall make reparation for the injury alleged to have been done, the common carrier shall be relieved of liability to the complainant only for the particular violation of law thus complained of. If such carrier or carriers shall not satisfy the complaint within the time specified, or there shall appear to be any reasonable ground for investigating said complaint, it shall be the duty of the commission to investigate the matters complained of in such manner and by such means as it shall deem proper." 49 U.S.C.A. § 13(1).

"§ 15. Determination of rates, routes, etc.; routing of traffic; disclosures, etc.—(1) Commission empowered to determine and prescribe rates, classifications, etc. Whenever, after full hearing, upon a complaint made as provided in section 13 of this title, or after full hearing under an order for investigation and hearing made by the commission on its own initiative, either in extension of any pending complaint or without any complaint whatever, the commission shall be of opinion that any individual or joint rate, fare, or charge whatsoever demanded, charged, or collected by any common carrier or carriers subject to this chapter for the transportation of persons or property, as defined in section 1 of this title, or that any individual or joint classification, regulation, or practice whatsoever of such carrier or carriers subject to the provisions of this chapter, is or will be unjust or unreasonable or unjustly discriminatory or unduly preferential or prejudicial, or otherwise in violation of any of the provisions of this chapter, the commission is authorized and empowered to determine and prescribe what will be the just and reasonable individual or joint rate, fare, or charge, or rates, fares, or charges, to be thereafter observed in such case, or the maximum or minimum, or maximum and minimum, to be charged, and what individual or joint classification, regulation, or practice is or will be just, fair, and reasonable, to be thereafter followed, and to make an order that the carrier or carriers shall cease and desist from such violation to the extent to which the commission finds that the same does or will exist, and shall not thereafter publish, demand, or collect any rate, fare, or charge for such transportation other than the rate, fare, or charge so prescribed, or in excess of the maximum or less than the minimum so prescribed, as the case may be, and shall adopt the classification and shall conform to and observe the regulation or practice so prescribed." 49 U.S.C.A. § 15(1).

tiff's particular traffic. But this misconceives what the Commission has actually done. It was not dealing finally with particular rates for particular traffic, but permitting increased rates for selected commodities, by a general order affecting all the railroads in the country.

If the increased rates as applied to the plaintiff's particular situation can be shown to be unjust and unreasonable, its remedy is clearly by proceedings under Sections 13 and 15 of the Act for individual relief, and for reparation orders under the Act of Congress. 49 U.S.C.A. § 16(1); Brimstone R. & Canal Co. v. United States, 1928, 276 U.S. 104, 48 S.Ct. 282, 72 L.Ed. 487; Alexander Sprunt & Son v. United States, 1930, 281 U.S. 249, 50 S.Ct. 315, 74 L.Ed. 832; Eagle Cotton Oil Co. v. Southern R. Co., 5 Cir., 51 F.2d 443, certiorari denied, 1931, 284 U.S. 675, 52 S.Ct. 130, 76 L.Ed. 571; Algoma Coal & Coke Co. v. United States, D.C.E.D.Va.1935, 11 F.Supp. 487. The plaintiff must proceed to exhaust its administrative remedies by challenging the rates filed by the railroads pursuant to the authorization granted it by the Commission in the ex parte proceeding.

The plaintiff has filed such a complaint which was assigned Docket No. 31264. The plaintiff must pursue this complaint to a final conclusion before the Commission before it may maintain an action in this court attacking the rates now in dispute.

It is not for this court to tinker with the delicate and fragile machinery of rate fixing and rate apportionment until the administrative process has been meticuously and stringently followed and exhausted in accordance with statutory requirement. The Commission must be afforded every available opportunity to utilize its vast reservoir of knowledge, experience, and know-how—in a proceeding wherein an unequivocal compliance with Sections 13 and 15 has been made with a complaint filed and defendant or defendants served, and clear-cut adversary contests evaluated and conclusively ruled upon, before the arm of the court should intercede upon the merits.

It is our considered judgment that the motion of plaintiff to strike the First Defense asserted by the Commission and the intervening railroads should be refused.

An appropriate order is entered.