NIAGARA MOHAWK POWER CORPO-
RATION and Public Service Electric
& Gas Company, Plaintiffs,

v.

UNITED STATES of America and Inter-
state Commerce Commission,
Defendants,

and

Atchison, Topeka, and Santa Fe Railway
Company, et al., Defendant-
Intervenors.

No. 74 Civ. 3385.

United States District Court,
S. D. New York.

Dec. 12, 1975.

LeBoeuf, Lamb, Leiby & MacRae, New York City, for plaintiffs; James O'Malley, Jr., Sheila E. Marshall, David Z. Gordon, Susan S. Lissitzyn, New York City, of counsel.

Hanford O'Hara, Fritz R. Kahn, Washington, D. C., for I. C. C.

Thomas E. Kauper, Asst. Atty. Gen., Carl D. Lawson, Dept. of Justice, Washington, D. C., Paul J. Curran, U. S. Atty., S. D. N. Y., for the United States.

Robert M. Peet, Penn Central Transp. Co., New York City, Richard J. Murphy, Penn Central Transp. Co., Philadelphia, Pa., Robert L. Conkling, New York City, Frank H. Gordon, New York City, for intervening railroads.

OPINION

Before VAN GRAAFEILAND, Circuit Judge, BONSAL and GAGLIARDI, District Judges.

PER CURIAM.

Plaintiffs seek a permanent injunction against an order of the Interstate Commerce Commission ("ICC") entered on June 3, 1974 (the "June 3d Order") in a proceeding entitled Ex-Parte No. 305, which order had the effect of permitting a 10% nationwide increase in railroad freight rates and charges. Plaintiffs allege jurisdiction exists under 28 U.S.C. §§ 1336, 1398, 2321 and 2325.

Plaintiffs are two regulated public utilities which in the course of generating and supplying electricity to their customers allegedly purchase and ship by rail in interstate commerce "large quantities of various commodities [including] bituminous steam coal."

Defendants are the ICC and the United States. 28 U.S.C. § 2322. Eastern,[1] Southern,[2] and Western[3] railroads have intervened as defendants.

The ICC proceeding, Ex-Parte No. 305, was initiated on April 22, 1974 when most of the nation's railroads (except the Long Island Railroad) petitioned the ICC for permission to file a master tariff[4] to institute a nationwide general increase of 10% on all freight rates and charges to become effective on May 2, 1974 or on not less than 10 days' notice. By order dated April 29, 1974, the ICC denied the railroads' petition but stated it would file a subsequent or-

1. Eastern Railroads are:
Boston and Maine Corporation, by its Trustee Robert W. Meserve
The Central Railroad Company of New Jersey, by its Trustee R. D. Timpany
Delaware and Hudson Railway Company
Erie Lackawanna Railway, by its Trustees Thomas F. Patton and Ralph S. Tyler, Jr.
Lehigh Valley Railroad Company, by its Trustees John F. Nash and Robert C. Haldeman
Maine Central Railroad Company
Norfolk and Western Railway Company
Penn Central Transportation Company, by its Trustees Robert W. Blanchette, John H. McArthur and Richard C. Bons
Pittsburgh & Lake Erie Railroad Company
Reading Company, by its Trustee Andrew L. Lewis, Jr.

2. The Southern Railroads are:
Southern Railway Company
The Alabama Great Southern Railroad Company
Apalachicola Northern Railroad Company
Atlanta & Saint Andrews Bay Railway Company
Atlanta and West Point Rail Road Company
Atlantic and East Carolina Railway Company
Birmingham Southern Railroad Company
Carolina, Clinchfield and Ohio Railway; Carolina, Clinchfield and Ohio Railway of South Carolina Lessees: Seaboard Coast Line Railroad Company, Louisville and Nashville Railroad Company
Central of Georgia Railroad Company
Cincinnati, New Orleans and Texas Pacific Railway Company
Columbia, Newberry and Laurens Railroad Company
Columbus and Greenville Railway Company
Fernwood, Columbia & Gulf Railroad Company
Florida East Coast Railway Company
Gainesville Midland Railroad Company
The Georgia Northern Railway Company
Georgia Rail Road & Banking Company, Operated as the Georgia Railroad by Lessees: Seaboard Coast Line Railroad Company, Louisville and Nashville Railroad Company
Georgia Southern and Florida Railway Company
Illinois Central Gulf Railroad Company
Interstate Railroad Company
Live Oak, Perry & South Georgia Railway Company
Louisiana Southern Railway Company
Louisville and Nashville Railroad Company
Norfolk Southern Railway Company
St. Louis-San Francisco Railway Company
Sandersville Railroad Company
Seaboard Coast Line Railroad Company
State University Railroad Company
Tampa Southern Railroad Company
Tavares and Gulf Railway Company
Tennessee, Alabama & Georgia Railway Company
Tennessee Railroad Company
Western Railway of Alabama
Winston-Salem Southbound Railway Company

3. The Western Railroads are:
The Atchison, Topeka and Santa Fe Railway Company
Burlington Northern Inc.
Chicago & Eastern Illinois Railroad
Chicago and North Western Transportation Company
Chicago, Milwaukee, St. Paul & Pacific Railroad
Chicago, Rock Island and Pacific Railroad Company
Denver and Rio Grande Western Railroad Company
Elgin, Joliet and Eastern Railway Company
Green Bay and Western Railroad Company
Kansas City Southern Railway Company
Missouri-Kansas-Texas Railroad Company
Missouri Pacific Railroad Company
St. Louis-San Francisco Railway Company
St. Louis Southwestern Railway Company
Soo Line Railroad Company
Southern Pacific Transportation Company
The Texas and Pacific Railway Company
Toledo, Peoria & Western Railroad Company
Union Pacific Railroad
The Western Pacific Railroad Company

4. To file tariffs implementing rate increases as to specific commodities, the railroads do not need advance ICC authorization; however, when the railroads intend to effect a general increase on all freight rates, as they did in this case, they may seek special ICC permission to file a "master tariff" which permits them to avoid administrative difficulties.

der specifying the "procedures to be followed with respect to this petition." On May 3, 1974, the ICC entered a second order granting the railroads permission to publish and file a proposed master tariff upon not less than 30 days' notice (which proposed master tariff would increase freight rates by 10% and would become effective June 5, 1974); instituting an investigation into the revenue needs of the railroads, in which protests by shippers opposing the increases were to be filed on or before May 24, 1974 and the railroads' replies to be filed on or before May 29, 1974; and providing that the increases collected as a result of the instant order were subject to refund with interest if any such increases were subsequently disapproved by the ICC. *See* Special Permission No. 74–3440. On May 6, 1974, the railroads filed Tariff X–305, in which they sought general rate increases of 10% to become effective on June 5, 1974. Plaintiffs herein filed joint "General Protest and Verified Statements" dated May 24, 1974, requesting *inter alia* a full hearing and investigation. The railroads filed a reply dated May 29, 1974. On June 3, 1974, the ICC entered an order, the subject of plaintiffs' complaint, suspending Tariff X–305 for seven months to permit investigation of the rate increase, but authorizing the railroads to cancel the suspended tariff on one day's notice and, subject to certain conditions not here relevant (*see Chesapeake and Ohio Railway Co., et al. v. United States,* 392 F.Supp. 358 (E.D. Va.1975) (3–Judge Court, appeal filed, 423 U.S. 923, 96 S.Ct. 264, 46 L.Ed.2d 248 (1975), to file a new tariff increasing the rates no more than 10%. Thereafter, the railroads cancelled Tariff X–305 and on June 5, 1974 filed Tariff X–305–A, embodying the 10% increase to become effective June 20, 1974.

Plaintiffs instituted this action on August 5, 1974 seeking to enjoin the June 3d Order. The Court granted motions by Eastern, Southern and Western railroads [5] for leave to intervene as defendants. The ICC and the intervening railroads move to dismiss the complaint on the ground that the Court lacks jurisdiction to review the June 3d Order.

Congress in enacting the Interstate Commerce Act of 1887 and its subsequent amendments established an extensive administrative procedure by which the ICC would oversee the railroads' rate increases. *See* 49 U.S.C. §§ 1–27. By statute, when a railroad seeks to effect a rate change, it must file a tariff with the ICC setting forth a schedule of new rates.[6] This tariff is published for public inspection. 49 U.S.C. §§ 6(1), 6(3). Normally, the effective date of the tariff is thirty days after the published notice, but this period may be reduced for good cause in the discretion of the ICC. 49 U.S.C. § 6(3). After a tariff is filed, the ICC may, upon complaint of a shipper or other interested person, or on its own initiative, conduct a hearing concerning the "lawfulness of such rate." 49 U.S.C. § 15(7). Pending this hearing and an ICC decision, the new rates will take effect as scheduled unless suspended for up to seven months by order of the ICC. *Id.* Irrespective of its decision as to suspension of the rates, the ICC, on its own initiative or on petition by an aggrieved shipper such as plaintiffs herein, may institute an investigation of specific rates, conduct a "full hearing," order refunds in cases where rates are found to be unjust, and/or "determine and prescribe what will be the just and reasonable individual or joint rate." 49 U.S.C. §§ 13(1), 15(1), 16(1).

The June 3d Order expressed the ICC's recognition that the railroads were in need of additional freight revenues to carry their costs and improve services. The June 3d Order "authorized [the railroads] to establish upon

---

5. *See* notes 1–3 *supra.*

6. But, the railroads may seek permission to file a "master tariff" as provided in note 4 *supra.*

not less than 15 days' notice . . . an increase in rates . . . not to exceed those set forth in [Tariff X–305]." The ICC did not consider the reasonableness of the rate increase as to coal or any other specific commodity. Therefore, the June 3d Order is a general revenue order and as such is not judicially reviewable. *Alabama Power Co. v. United States*, 316 F.Supp. 337 (D.D.C.1970) and *Atlantic City Electric Co. v. United States*, 306 F.Supp. 338 (S.D.N.Y.1969), *both aff'd by an equally divided court*, 400 U.S. 73, 91 S.Ct. 259, 27 L.Ed.2d 212 (1970); *Electronics Industries Association v. United States*, 310 F.Supp. 1286 (D.D.C.1970), *aff'd mem.*, 401 U.S. 967, 91 S.Ct. 1188, 28 L.Ed.2d 318 (1971); *Florida Citrus Commission v. United States*, 144 F.Supp. 517 (N.D.Fla.1956), *aff'd mem.*, 352 U.S. 1021, 77 S.Ct. 589, 1 L.Ed.2d 595 (1957); *Koppers Co. v. United States,* 132 F.Supp. 159 (W.D. Pa.1955); *Algoma Coal & Coke Co. v. United States*, 11 F.Supp. 487 (E.D.Va. 1935). *See also Aberdeen & Rockfish Railroad Co. v. SCRAP*, 422 U.S. 289, 311–316, 95 S.Ct. 2336, 45 L.Ed.2d 191 (1975); *National Small Shipments Traffic Conference, Inc. v. United States*, 321 F.Supp. 500 (S.D.N.Y.1970). Congress has set forth a detailed statutory scheme for shippers such as plaintiffs to obtain review of the railroads' rate increases for coal or any other freight. 49 U.S.C. §§ 13, 15. As stated in *Atlantic City Electric Co.*, the Courts should not "tinker with the delicate and fragile machinery of rate fixing . . . until the administrative process has been meticulously and stringently followed and exhausted." 306 F.

Supp. at 342, quoting *Koppers Co. v. United States*, 132 F.Supp. at 163. Responsibility for setting railroad rates rests with the carriers and there is no requirement that the ICC review these rates at the present stage of the administrative proceedings. In view of plaintiffs' remedy under sections 13 and 15, their assumption of the role of "private attorney general" is inappropriate.

If the Court were to grant the injunctive relief sought by plaintiffs, the railroads under the statute could file new tariffs seeking to implement the rate increases. Moreover, the financial difficulties of the nation's railroads are a matter of public knowledge and have been aggravated by inflation.

The Court rejects plaintiffs' contention that jurisdiction exists because the complaint alleges that the ICC procedures in this case were improper. As noted above, the issue with which plaintiffs are fundamentally concerned, i. e., the reasonableness of the increased railroad rates as to commodities purchased and shipped by plaintiffs, has yet to be considered by the ICC. *See Alabama Power Co. v. United States*, 316 F.Supp. at 338–39; *Atlantic City Electric Co. v. United States*, 306 F.Supp. at 341–42. Also, if they desire, plaintiffs may seek judicial review upon completion of the section 13 proceedings.[7] *See Atlantic City Electric Co. v. United States*, 306 F.Supp. at 343.

Accordingly, defendant ICC's and the railroad intervenors' motions to dismiss the plaintiffs' complaint are granted.

It is so ordered.

7. It is unnecessary to decide whether the June 3d Order is a suspension order.